J. MICHAEL CROWE [Bar No. 043297]
DOUGLAS L. DAY [Bar No. 092581]
CROWE & DAY
100 Wilshire Boulevard, Suite 200
Santa Monica, CA  90401-1113
(310) 917-4500

Attorneys for Defendant BRIAN WILSON,
by and through JEROME S. BILLET,
Conservator of the Person and Estate
of Brian Wilson

**ORIGINAL**

FILED
CLERK, U.S. DISTRICT
APR 1 9 1994
CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL E. LOVE,<br><br>              Plaintiff,<br><br>v.<br><br>BRIAN D. WILSON, an<br>individual, by and through<br>JEROME S. BILLET in his<br>representative capacity as<br>Conservator of the Person and<br>Estate of BRIAN WILSON,<br><br>              Defendant. | CASE NO. 92 4594 WJR (Tx)<br><br>TRIAL BRIEF OF DEFENDANT BRIAN<br>WILSON<br><br><br>TRIAL DATE:  April 26, 1994<br>TIME:  9:30 a.m.<br>COURTROOM:  10<br>The Honorable William J. Rea |

# TABLE OF CONTENTS

PAGE

I.   INTRODUCTORY STATEMENT ........................1

II.  SUMMARY OF WHY A JUDGMENT AS A
     MATTER OF LAW ......................2

     A.   The Eleventh Claim Does Not
          Constitute Fraud ......................2

     B.   The Eighteenth Claim Is Without Merit ..........4

     C.   The Nineteenth Claim For Unjust
          Enrichment Must Fall With The
          Other Claims ......................5

III. THE ELEVENTH CLAIM WILL BE SUBJECT TO
     A JUDGMENT AS A MATTER OF LAW ......................6

     A.   There Can Be No Fraud Claim
          Based Upon Wilson's Settlement
          With A&M And MSK ..........................6

          1.   The Remaining Allegations Of
               The Eleventh Claim Relate To
               The Settlement ......................6

          2.   Love Cannot Establish The Elements
               Of Fraud ......................7

          3.   Love Has Suffered No Damages ..................7

          4.   Wilson's Entry into the Settlement
               Agreement Was Not A Representation
               To Love, Let Alone A
               Misrepresentation ......................8

          5.   Love Did Not Rely On The Alleged
               Concealments And Misrepresentations
               Relating to Wilson's
               Settlement Agreement ......................9

          6.   Love Did Not Suffer Actual Injury
               as a Result of Wilson's Settlement
               Agreement ..........................11

               (a)  Wilson's Settlement Agreement
                    Affects Only Wilson's Copyright
                    Interests In The Songs From The
                    Sea Of Tunes Catalog ...............11

               (b)  Wilson's Transfer of His Copyright
                    Interests Has No Impact or Bearing
                    on Love's Copyright

W81-1.2.DLD.6.1

-i-

1              Interests If Any   .....................12

2         (c)  Love Did Bring A Claim That The
               1969 Letter Was Invalid
3              As To Him          .....................13

4    B.   The Eleventh Claim Must Fail
          As A Matter of Law        .....................14

5
6    IV.  THE EIGHTEENTH CLAIM WILL BE SUBJECT TO
          A JUDGMENT AS A MATTER OF LAW   .....................14

7    A.   Summary of Love's Eighteenth Claim
          for Breach of Contract/Promissory
8         Estoppel               .....................14

9    B.   Assuming, Arguendo, A Contract As
          Alleged by Love, Any Such Contract
10        Is Voidable And Has Been Rescinded
          By Wilson's Conservator .....................15

11
12   C.   There Was No Agreement Between Wilson
          and Love As To The Essential Terms Of
          The Agreement          .....................16

13
14        1.   The Alleged Contract Did Not
               Specify The Amount Of Money To
               Be Paid, Nor Which Songs Wilson
15             Was To Compensate Love For   ...............17

16        2.   There Was No "Meeting of The
               Minds" As To The Terms Or Purpose
17             Of The Alleged Contract   .................19

18   D.   An Agreement To Agree Is Not
          Enforceable Under California Law   .................19

19
20   E.   Taking The Record As Whole,
          Love's Eighteenth Claim Fails
          As A Matter of Law        .....................20

21
22   F.   Love Cannot Establish The Elements
          Necessary For A Claim Of Promissory
          Estoppel               .....................23

23
24        1.   The Alleged Promise Is Ambiguous
               On Its Terms       .....................23

25        2.   Love's Reliance, If Any,
               Was Unreasonable    .....................23

26
27        3.   Love Did Not Rely On The Alleged
               Promise To His Detriment   ...................24

28        4.   An Agreement To Agree Cannot Be
               Enforced On A Promissory Estoppel

W81-1.2.DLD.6.1

-ii-

Theory ............................25

G.   Even If Wilson's Attorneys Made
     Promises To Love, Those Promises
     Do Not Create A Valid Oral Contract
     Binding Wilson ........................25

     1.   An Attorney Does Not Have Plenary
          Power To Bind His Client To A
          Contract ..............................25

     2.   The Alleged Promises Were Outside
          The Scope Of Wilson's Attorneys'
          Authority, Contravening The
          Professional Rules Of Conduct
          for Attorneys ...........................26

H.   The Eighteenth Claim Must Fail As
     A Matter of Law ........................27

V.   THERE IS NOTHING LEFT TO THE NINETEENTH
     CLAIM FOR UNJUST ENRICHMENT .......................27

VI.  NO PUNITIVE DAMAGES CAN BE AWARDED IN THIS CASE .........28

A.   There Is No Basis For An
     Award Of Punitive Damages ....................28

B.   Punitive Cannot Be Awarded
     Against An Incompetent .......................28

VII. EVIDENTIARY ISSUES ................................29

A.   All Testimony And Evidence
     Relating To Love's Dismissed
     Claims Should Be Excluded At Trial ...............29

B.   Landy's Testimony Must Be Excluded At Trial ........29

     1.   Wilson's Communications With
          Landy Are Privileged Under
          The Psychotherapist-Patient Privilege .........29

     2.   Landy Was Not Wilson's Agent .................30

C.   Love's Testimony Is Admissible ....................30

D.   Wilson's Settlement Amount From The
     Prior Wilson Litigation Against Irving
     Music Must Be Excluded From Trial ...............31

E.   Wilson's Pleadings from Prior
     Litigation Are Not Binding Admissions ..............31

F.   Additional Evidentiary Problems ...................32

W81-1.2.DLD.6.1

1

## TABLE OF AUTHORITIES

2                                                                    **PAGE**

3
        Banco do Brazil S.A. v. Latian, Inc.,
4       234 Cal. App. 3d 973, 1015 n.55, 285
        Cal. Rptr. 870 (1991);          .........................19
5
        Burgess v. Rodom,
6       121 Cal. App. 2d 71,73, 262 P.2d 335 (1953)   .............25

7       Blanton v. Womancare,
        38 Cal. 3d 396, 407-408, 212 Cal. Rptr. 151 (1985)   ........25
8
        California Lettuce Growers v. Union Sugar Co.,
9       45 Cal. 2d 474, 481, 289 P.2d 785 (1955)        ..............

10      Cooper v. Equity Gen. Ins.,
        219 Cal. App. 3d 1252, 1262-63 (1990)      .................11
11
        Derby & Co., Inc. v. Seaview Petroleum Co.,
12      756 F. Supp. 868 (E.D. Pa. 1991)      ......................32

13      Doctors' Co. Ins. Serv. v. Superior Court,
        225 Cal.App.3d 1284, 1289, 275 Cal.Rptr.
14      674 n.2 (1990).        .....................................2

15      Ellis v. Klaff,
        96 Cal. App. 2d 471, 478, 216 P.2d 15 (1950)      ...........16
16
        Foster v. Arcata Assoc., Inc.,
17      772 F.2d 1453, 1462 (9th Cir. 1985)      ....................21

18      Fraker v. Sentry Life Ins. Co.,
        19 Cal. App. 4th 276, 286, 23 Cal. Rptr. 2d
19      372 (1993)         .............................7

20      Jefferson v. J.E. French Co.,
        54 Cal. App. 2d 717, 719, 7 Cal. Rptr. 899,
21      355 P.2d 643 (1960)      ............................27

22      Jurado v. Eleven Fifty Corp.,
        813 F.2d 1406, 1410 (9th Cir. 1987)      ....................21
23
        Kruse v. Bank of America,
24      202 Cal. App. 3d 38, 59-60, 248
        Cal. Rptr. 217 (1988)        .........................20
25
        Ladas v. California State Auto. Assoc.,
26      19 Cal. App. 4th 761, 770, 23 Cal. Rptr.
        2d 810 (1993)        ..........................17
27
        Laks v. Coast Fed. S. & L. Assoc.,
28      60 Cal. App. 3d 885, 890, 131 Cal. Rptr.
        836 (1976)        ..............................23

W81-1.2.DLD.6.1

_Matsushita Elec. Industr. Co., Ltd. v._
_Zenith Radio Corp._, 475 U.S. 574, 587, 106 S.Ct.
1348, 89 L.Ed. 538 (1986)   ...............................21

_Miller Music Corp. v. Charles N. Daniels, Inc._,
362 U.S. 373, 373-74, 80 S. Ct. 792, 4 L. Ed.2d
804 (1960);   ...............................................13

_Okun v. Morton_,
203 Cal. App. 3d 805, 828, 250
Cal. Rptr. 220 (1988)   .......................................7

_Parrixsh v. Atchison, T. & S. F. R. Co._,
152 F. Supp. 158 (D. Cal. 1957)   ..........................32
_Pena v. Los Angeles_,
8 Cal. App. 3d 257, 262, 87 Cal. Rptr.
326 (1970)   .................................................28

_Pulver v. AVCO Financial Services_,
182 Cal. App.3d 622, 639, 227 Cal. Rptr. 491 (1986)  ..........7

_Robinson & Wilson, Inc. v. Stone_,
35 Cal. App. 3d 396, 407, 110 Cal. Rptr. 675 (1974) ..........16

_Shurpin v. Elmhirst_,
14 Cal. App. 3d 94, 101, 195 Cal. Rptr. 737 (1983)   ..........9

_Sweet Music, Inc. v. Melrose Music Corp._,
189 F. Supp. 655 (S.D. Cal. 1960)   ........................13

_Wilson v. Lewis_,
106 Cal. App. 3d 802, 809, 165 Cal. Rptr.
396 (1980)   .................................................16


Federal Rules of Civil Procedure Rule 26(b)   ...............32

Federal Rule of Evidence 801(d)(2)   ......................32

5 B. Witkin, _California Procedure_,
131 (3d Ed. 1985)   ..........................................11

1 Witkin, _Summary of California Law_
(9th ed. 1987) Contracts, §887   ...........................16

W81-1.2.DLD.6.1

## I.

### INTRODUCTORY STATEMENT

Once plaintiff Michael Love ("Love") has finished putting on his case in chief on the three remaining claims in this case there will be nothing for the jury to consider and therefore a judgment as a matter of law pursuant to Rule 50(a) F. R. Civ. P. in favor of defendant Brian Wilson ("Wilson") will be in order.

All that remains of Love's Eleventh Claim for Conspiracy to Defraud ("Eleventh Claim") after this Court's Order of April 18, 1994 on Wilson's Motion for Reconsideration relating to Wilson's underlying Motion for Summary Judgment ("Order"), is the allegation that Wilson's 1992 settlement of Wilson's prior lawsuit ("Wilson Litigation") against Almo Music Corporation and its related companies ("A&M"), Abe Somer ("Somer") and Mitchell, Silberberg & Knupp ("MSK") resulted in a fraud being perpetrated upon Love. This allegation standing alone, however, cannot sustain the Eleventh Claim as it does not, and cannot allege a claim for fraud, nor can Love prove any damages as a result.

Moreover, the Court indicated at the Pre-Trial Conference of April 18, 1994 that the Court may dismiss the Eleventh Claim <u>sua sponte</u> since the Court felt that there was nothing left of the Eleventh Claim after the Court signed the Order.

The remaining Eighteenth Claim for Breach of Contract/Promissory Estoppel ("Eighteenth Claim") relies on a supposed oral contract or promise made by Wilson's former attorneys to the effect that, if Love testified truthfully in the Wilson Litigation, then Wilson would pay Love an unspecified amount of money if Wilson was successful in his litigation.  The

evidence to be presented by Love on this claim will give nothing for the jury to decide because the evidence will show that no contract of definite terms was entered into, and that any promise made was ambiguous at best and devoid of the essential terms, such as the amount of money to be paid, necessary to be enforceable.   Moreover, there is no consideration as Love was obligated to testify truthfully.

Love's evidence will show that any promise or agreement made was merely a promise to agree or an agreement to attempt to agree in the future.   Neither can be enforceable by a jury as a matter of law.

According to the Court's Order, Love's final remaining claim, the Nineteenth for Unjust Enrichment ("Nineteenth Claim") is based solely on the Eighteenth Claim.   The Nineteenth Claim therefore adds nothing for the jury to consider, and this claim must fall along with the Eighteenth.

## II.

## SUMMARY OF WHY A JUDGMENT AS A MATTER OF LAW

## WILL BE IN ORDER

A.   The Eleventh Claim Does Not Constitute Fraud[1]

All that remains of the Eleventh Claim is the allegation that Wilson's 1992 settlement of the Wilson Litigation ("Settlement Agreement") resulted in a fraud being perpetrated

---

[1]Since California law does not recognize a separate tort of civil conspiracy, the Eleventh Claim is simply one for fraud. Doctors' Co. Ins. Serv. v. Superior Court, 225 Cal.App.3d 1284, 1289, 275 Cal.Rptr. 674 n.2 (1990).

W81-1.2.DLD.6.1

-2-

1 upon Love.[2]

2     This allegation standing alone, however, cannot sustain the

3 Eleventh Claim as it does not, and cannot, allege a claim for

4 fraud.

5     Wilson made no representation to Love by executing the

6 settlement documents and the settlement provided nothing for Love

7 to rely upon.  The settlement impacted only the copyright and

8 publishing rights of Wilson.  Love was not a party to the Wilson

9 Litigation and the settlement could not and did not address any

10 of Love's rights.  Wilson could do whatever he wanted with his

11 own copyright and publishing rights, including settling his own

12 claims regarding such rights.

13     Love was free to pursue his own alleged copyright and

14 publishing claims and did so in this litigation by suing A&M,

15 Somer and MSK.  This resulted in Love's _own_ settlement for which

16 he was generously compensated, and by which Love acknowledged the

17 same rights of A&M to the Sea of Tunes copyrights and publishing

18 rights that Love complained about Wilson acknowledging when

19 Wilson settled the Wilson Litigation.  Thus, to the extent Love

20 sustained any damages, Love already received compensation for

21 that damage from the parties responsible.

22     Since Wilson's settlement constitutes no fraud as to Love,

23

---

24 [2] Love's Eleventh Claim had relied upon those allegations of
fraud and concealment relating to the events of the 1960's

25 involving Sea of Tunes and Murry Wilson ("Murry") which this
Court's Order held to be time barred by the statute of

26 limitations. The Eleventh Claim also relied upon allegations
of concealment of the Somer and MSK conflict of interest that

27 the Court's Order held to be meritless because the conflict
was, in fact, disclosed by Wilson.

28

W81-1.2.DLD.6.1

1  the Court should render a judgment as a matter of law as to the
2  Eleventh Claim since there will be nothing for the jury to
3  consider.

4  B.    The Eighteenth Claim Is Without Merit

5      Love's Eighteenth Claim alleges that Wilson, through his
6  attorneys, promised Love that the Wilson Litigation would be used
7  to recover the copyrights for the songs in the Sea of Tunes
8  Catalog ("The Catalog") for both Wilson and Love, and that Love
9  would be paid, from the proceeds of that litigation, the monies
10 owed him as a result of not being fully accredited as a co-author
11 of the songs in The Catalog.  Love claims that this was a valid
12 oral contract, binding upon Wilson.

13     Love's claim is without merit.  Assuming, arguendo, that a
14 contract was entered into, that contract was voidable because
15 Wilson did not have the capacity to enter into an enforceable
16 contract, and Wilson's conservator subsequently rescinded the
17 contract.

18     Moreover, the evidence will show that there was no
19 consideration and no meeting of the minds necessary to create an
20 enforceable contract.  The promises that Love alleges were made
21 to him do not give rise to an enforceable contract for they are
22 devoid of all of the essential terms necessary for a contract to
23 be enforceable (i.e., the amount of money to be paid and which
24 songs payment was to be made for).  The trier of fact will be
25 unable to determine what would constitute a breach of the
26 contract and what would be the measure of damages for that
27 breach.  If there was any agreement made between Love and
28 Wilson's attorneys, it was merely an agreement to agree in the

W81-1.2.DLD.6.1

-4-

1   future, which is not enforceable as a matter of law.

2        Looking at the evidence which will be presented at trial
3   reveals that Love's explanations regarding the Eighteenth Claim
4   are implausible and do not raise a genuine issue of material fact
5   for the jury to consider.

6        Furthermore, even if Wilson's attorneys made the promises
7   alleged, which Wilson's evidence will refute, Wilson is not bound
8   by those promises.  The promises as alleged by Love constitute
9   conduct which is prohibited by the Rule of Professional Conduct
10  for attorneys and therefore were outside the scope of the
11  attorneys' authority.

12       Love also claims that even if there was no enforceable
13  contract, Wilson must abide by the alleged promises based on a
14  theory of promissory estoppel.  However, Love cannot establish
15  the elements necessary for promissory estoppel.  Love cannot show
16  that he reasonably relied on the promises.  In addition, given
17  the effect of the Court's Order, as discussed _infra_,  Love cannot
18  show that he sustained any damages based upon the alleged
19  promises.

20  C.   The Nineteenth Claim For Unjust Enrichment Must Fall At The
21       Same Time As The Eighteenth Claim

22       The Court's Order held that Love's Nineteenth Claim for
23  Unjust Enrichment is merely based upon the remaining Eighteenth
24  Claim.   The Nineteenth claim itself adds nothing independently
25  and therefore should fall subject to a judgment as a matter of
26  law at the same time that the Eighteenth does.

27  ///

28

W81-1.2.DLD.6.1

## III.

### THE ELEVENTH CLAIM WILL BE SUBJECT TO

### A JUDGMENT AS A MATTER OF LAW

A.   There Can Be No Fraud Claim Based Upon Wilson's Settlement

With A&M And MSK

    1.   The Remaining Allegations Of The Eleventh Claim Relate

        To The Settlement.

While the Court indicated at the April 18, 1994 Pre-Trial

Conference that the Court may dismiss the Eleventh Claim sua

sponte, Wilson has briefed the issues relating to the Eleventh

Claim for the Court's benefit.

By eliminating Love's fraud claims based on events from the

1960's and based on the alleged concealment of the Somer - MSK

conflict of interest, the Court's Order has had the effect of

reducing the Eleventh Claim to merely the assertion that Wilson

defrauded Love by entering into the 1992 Settlement

Agreement with A&M, Somer and MSK which settled the Wilson

Litigation.

Specifically, the alleged overt acts of Wilson's fraud consist

of: (1) Wilson executing settlement documents knowing that such

execution breached Wilson's alleged promises[3] to Love, and knowing

---

[3]   Sub-paragraph 119 (b) of the Fourth Amended Complaint
references supposed promises made by Wilson to Plaintiff
"as set forth in paragraphs 20, 26 and 171 through
196...."  No allegations of any promise can be found in
paragraphs 20 and 26, and there are no paragraphs
numbered 180 - 196. The only alleged promises are those
found in paragraph 172 wherein it is alleged that Wilson
would pursue the Wilson litigation to recover the
copyrights for Wilson and Plaintiff, and that Wilson
would compensate Plaintiff for the alleged past failure
to properly attribute songwriting credit to Plaintiff.
These promises are the crux of the Eighteenth Claim for
Breach of Contract/Promissory Estoppel. The reasons why

1   that such execution contradicted Wilson's previous testimony that
2   Wilson's signature on the August 20, 1969 letter ("the 1969
3   Letter") was not authentic in the hope that Love would not be able
4   to challenge the validity of the 1969 Letter; (2) concealing facts
5   relating to the settlement of the Wilson Litigation and the terms
6   thereof; and (3) Wilson's attorney allegedly misrepresenting that
7   the settlement of the Wilson Litigation had been consummated.  See
8   4th Am. Compl., pp.47-49 ¶119(a-b and k-l).

9       2.   Love Cannot Establish The Elements Of Fraud.

10      In order to establish a cause of action for fraud, Love must
11  prove the following elements:  (1) misrepresentation (false
12  representation); (2) knowledge of the falsity (scienter); (3)
13  intent to induce reliance; (4) justifiable reliance; and (5)
14  resulting damages.  Okun v. Morton, 203 Cal. App. 3d 805, 828, 250
15  Cal. Rptr. 220 (1988).  See also, Pulver v. AVCO Financial
16  Services, 182 Cal. App.3d 622, 639, 227 Cal. Rptr. 491 (1986). All
17  of the elements must be present, the absence of even one element is
18  fatal to recovery.  Okun, supra, 203 Cal. App. 3d at p. 828.  See
19  also, Fraker v. Sentry Life Ins. Co., 19 Cal. App. 4th 276, 286, 23
20  Cal. Rptr. 2d 372 (1993).

21      Love cannot avoid a judgment as a matter of law as to his
22  Eleventh Claim because Wilson's entry into the Settlement Agreement
23  does not establish any of the requisite elements of a separate and
24  distinct fraud under California law.

25      3.   Love Has Suffered No Damages

26      Love has suffered no damages as a result of Wilson settling

27
28          the Court should render a judgment as a matter of law on
            the Eighteenth Claim are set forth in Section IV. infra.

the Wilson Litigation. The Settlement Agreement had nothing to do with Love. Wilson's settlement of the Wilson Litigation did not result in any representation being made to Love, nor did the settlement create anything for Love to rely on.

In addition, the Settlement Agreement settling the Wilson Litigation is clear in stating repeatedly that the songwriting royalties of any composer of any of the songs in the Sea of Tunes Catalog was to remain unaffected by the Settlement Agreement. See Settlement Agreement p. 14, Section III.D(2). Exhibit "6" to plaintiff's 4th Am. Compl., filed under seal. Therefore, Love's continued right to receive songwriter royalties from A&M as to the 31 songs that Love acknowledged that he co-authored when Love signed the 1969 Letter was unaffected by the Settlement Agreement. Love was therefore in no way damaged by the Settlement Agreement.

Finally, to the extent Love has suffered any wrong resulting from the settlement of the Wilson Litigation, Love has already been compensated. Love brought suit in this case against A&M, Somer and MSK and joined them as defendants to Love's Eleventh Claim for Conspiracy to Defraud. Love chose to settle his claims against Wilson's alleged co-conspirators and recovered $1,800,000.00.

4. Wilson's Entry into the Settlement Agreement Was Not A Representation To Love, Let Alone A Misrepresentation.

The allegation that Wilson told the other settling parties in the Wilson Litigation that he would abide by the 1969 Letter and the other 1960's contracts by which title to Wilson's songs passed to the Sea of Tunes publishing company and then to A&M is not an allegation of a representation to Love. Love was not a litigant in the Wilson Litigation; Love was not a party to the Settlement

W81-1.2.DLD.6.1

-8-

1  Agreement; Love was not even mentioned in the Settlement Agreement;
2  and the promises and warranties set forth in the Settlement
3  Agreement were made by and for only those signatories to the
4  Settlement Agreement.

5      The fact and existence of Wilson's settlement resulted in no
6  representation being made to Love.  If Wilson's claims against A&M,
7  Somer and MSK had been decided by a jury instead of being settled
8  prior to trial, no representation to Love would have resulted from
9  a jury verdict on Wilson's claims.  The fact that Wilson chose to
10 settle his claims instead of taking his claims to trial creates no
11 representation directed toward Love.

12     Absent a representation made <u>to Love</u>, Love cannot maintain a
13 claim for fraud, as a matter of law.  <u>See e.g.</u>, <u>Pulver</u>, <u>supra</u>, 182
14 Cal. App. 3d 622, 640, (Plaintiff had no claim for fraud where
15 defendant's false credit report to third parties was not a
16 misrepresentation <u>to the plaintiff</u>); <u>Shurpin v. Elmhirst</u>, 14 Cal.
17 App. 3d 94, 101, 195 Cal. Rptr. 737 (1983) (Plaintiffs had no fraud
18 claim against one defendant who made allegedly false
19 representations to another defendant but not <u>to the plaintiffs</u>).

20     Since Wilson's execution of the Settlement Agreement did not
21 constitute a representation to Love, Love does not allege and
22 cannot possibly prove that Wilson's Settlement Agreement
23 constituted a knowing <u>mis</u>representation to Love.  <u>Mis</u>representation
24 or falsity is a second requisite element of a fraud claim without
25 which Love cannot recover.  <u>See Pulver</u>, <u>supra</u>, 182 Cal. App. 3d
26 622, 639.

27

28

W81-1.2.DLD.6.1

5.  Love Did Not Rely On The Alleged Concealments And Misrepresentations Relating to Wilson's Settlement Agreement

Since Wilson's Settlement Agreement was not a representation or misrepresentation to Love, Love could not, and did not, rely to his detriment upon Wilson's entry into the Settlement Agreement. There was nothing for Love to rely upon.

Reliance is yet another required element of a fraud claim which Love fails to plead and cannot prove.  Pulver, supra, 182 Cal. App. 3d 622, 640 (No reliance where false credit report given to third party, not plaintiff).

The terms of the settlement which were allegedly concealed from Love did not mention, affect or involve Love in any manner. The Settlement Agreement affected Wilson's copyright claims, not Love's.  Love was free to later pursue his own copyright claims against A&M, Somer and MSK and did so in this litigation.  Love ultimately chose to settle his own claims against these parties, as did Wilson.

Since the Settlement Agreement did not call for Love to do anything, and since the agreement did not provide that Love was to receive anything or in any way be affected by the agreement, the alleged concealment of the agreement's terms left nothing for Love to rely on, let alone reasonably rely on.  No necessity or duty existed for any party to the Settlement Agreement to apprise Love of the terms of settlement.

Similarly, the alleged misrepresentation regarding when the Settlement Agreement was consummated created nothing for Love to rely on.  Since neither the Wilson Litigation nor its settlement

W81-1.2.DLD.6.1

involved Love's claims or rights, the precise date of the termination of the Wilson Litigation, whether by settlement or trial, was irrelevant as to Love.

6. Love Did Not Suffer Actual Injury as a Result of Wilson's Settlement Agreement

"Fraud is not actionable unless it results in some injury; hence injury or damages is an essential element to the cause of action. In the tort action the injury is pecuniary damage . . . ." 5 B. Witkin, California Procedure, 131 (3d Ed. 1985).

Even assuming Wilson "conspired" with A&M to ratify the 1969 Letter and Wilson's 1960's songwriting contracts as to Wilson, Love does not allege, and cannot prove, that he was damaged as a result. Cooper v. Equity Gen. Ins., 219 Cal. App. 3d 1252, 1262-63 (1990) (Carrier's cross-claim for fraud alleging collusive lawsuits between its insureds and others lacked merit where carrier failed to allege resulting damage).

(a) Wilson's Settlement Agreement Affects Only Wilson's Copyright Interests In The Songs From The Sea Of Tunes Catalog

The Eleventh Claim incorporates the provisions of the Settlement Agreement which specifically limit Wilson's ratification of the 1969 Letter and Wilson's 1960's songwriter contracts solely "as to Wilson." 4th Am. Compl., 41 ¶112 1.12. Wilson attacked the 1969 Letter only to the extent that it purported to confirm Wilson's relinquishment of Wilson's ownership interest in Sea of Tunes or the copyrights Sea of Tunes had acquired. The validity or invalidity of Wilson's contracts or the 1969 Letter as to Wilson, is separate and independent from the issue of the enforceability of

1  Love's 1960's contracts or the 1969 Letter as to <u>Love</u>.

2  Love was simply <u>not</u> a party to the Settlement Agreement
3  therefore Love's copyright claims were not affected by the
4  Settlement Agreement. Wilson's Settlement Agreement could not, and
5  did not purport to bind <u>Love</u> to the 1969 Letter or any other
6  document. <u>See</u> Settlement Agreement, Exhibit "6" to plaintiff's 4th
7  Am. Compl., filed under seal.

8  The Settlement Agreement also repeatedly confirms that none of
9  its provisions affected in any way <u>any</u> songwriter royalties. <u>See</u>
10  Settlement Agreement p. 14, Section III, D(2), Exhibit "6" to
11  plaintiff's 4th Am. Compl., filed under seal. A&M's obligation to
12  pay Love songwriter royalties as spelled out in the 1969 Letter on
13  the 31 songs of which Love was acknowledged as a co-author was
14  unaffected. Wilson did not seek to change Love's share of
15  songwriter royalties or the songs Love is credited as co-authoring.
16  Wilson's settlement therefore had no effect on Love's songwriting
17  royalties or authorship credit.

18  (b) <u>Wilson's Transfer of His Copyright Interests Has No</u>
19  <u>Impact or Bearing on Love's Copyright Interests If</u>
20  <u>Any</u>

21  Even if Wilson had succeeded in setting aside his contracts
22  which transferred Wilson's copyright interests to Sea of Tunes and
23  then to A&M, Love would have still been bound by <u>Love's</u> transfer of
24  Love's claimed undivided copyright interests, even if Love and
25  Wilson transferred their respective copyright interests by the same
26  contracts.

27  A co-owner can separately transfer his own interest in a
28  copyrighted work. M. & D. Nimmer, <u>Nimmer on Copyright</u> 6-32 (1993).

W81-1.2.DLD.6.1

-12-

1   Thus, for example, if a one co-author's grant of a renewal of a
2   copyright interest is voided because he dies before renewal, the
3   second co-author's grant of the second co-author's undivided
4   interest in the renewal copyright in the very same work is
5   nevertheless valid as to the second co-author. Miller Music Corp.
6   v. Charles N. Daniels, Inc., 362 U.S. 373, 373-74, 80 S. Ct. 792,
7   4 L. Ed.2d 804 (1960); Sweet Music, Inc. v. Melrose Music Corp.,
8   189 F. Supp. 655 (S.D. Cal. 1960).

9   Love transferred his copyright interests to "Murry Wilson dba
10  Sea of Tunes" and to "Sea of Tunes Publishing Co., Inc.," in
11  separate contracts which only Love signed. See Ex. 30-32, 34-36,
12  38, 40-43, 45-46, 48, 50, 52 & 54-55 to the Declaration of James J.
13  Little filed Feb. 11, 1994 in Support of Wilson's Motion for
14  Reconsideration. See also, Wilson's Memorandum of Points and
15  Authorities in Opposition to Love's Motion for Partial Summary
16  Judgment, filed March 7, 1994, at 27-28, n.16.

17  Love's execution of separate songwriter contracts for the 31
18  songs Love co-authored would be wholly unaffected by any allegation
19  or evidence that Wilson's 1960's songwriter contracts were suspect
20  as to Wilson. Moreover, Wilson's attempt to set aside the transfer
21  of Wilson's copyright interests because of Wilson's incompetence
22  did not provide Love, as a competent contracting party, with a
23  ground to reclaim whatever copyright interests Love relinquished in
24  the 1969 Letter.

25              (c)   Love Did Bring A Claim That The 1969 Letter Was
26                    Invalid As To Him

27  Since Wilson's Settlement Agreement did not purport to ratify
28  the 1969 Letter on Love's behalf, Love remained free to assert --

and he did, in fact, assert in this case -- that the 1969 Letter was invalid as to him.   _Fraker_, _supra_, 19 Cal. App. 4th 276 (Plaintiff alleged insurer falsely represented group coverage would extend throughout plaintiff's life; no actionable fraud where plaintiff did not allege that as a result of relying on this representation he was unable to obtain substitute insurance).

Love does not allege, and cannot prove, that because Wilson ratified the 1969 Letter "as to Wilson," Love could not then attack the 1969 Letter as to Love.   In fact Love did so challenge the 1969 Letter and recovered $1,800,000.00 to settle his challenge.

B.   The Eleventh Claim Must Fail As A Matter of Law

In sum, the Eleventh Claim fails to allege the requisite elements of fraud.   As a result, a judgment as a matter of law should be entered in Wilson's favor.

IV.

THE EIGHTEENTH CLAIM WILL BE SUBJECT TO

A JUDGMENT AS A MATTER OF LAW

A.   Summary of Love's Eighteenth Claim for Breach of Contract/Promissory Estoppel

Love's Eighteenth Claim alleges that in 1989-90, Wilson through his attorneys, promised Love that the Wilson Litigation would be used to recover copyrights for the songs in The Catalog for both Wilson's and Love's benefit and that Love would be paid unspecified "monies owed" from the proceeds of Wilson's lawsuit. See 4th Am. Compl. at pp. 63-64.

Love claims that these promises constituted a legally binding oral contract.   Love further claims that Wilson breached the contract because after Wilson received a settlement in the Wilson

1  Litigation, he refused to pay Love the "monies owed" him.

2  In the alternative, Love claims that even if an enforceable
3  oral contract did not exist as between Love and Wilson, Wilson,
4  through his attorneys, promised Love that he would pay Love the
5  "monies owed."  In reliance upon this promise Love allegedly did
6  not join in the Wilson Litigation and willingly testified on
7  Wilson's behalf in that lawsuit.  Love further claims that as a
8  result of his reliance, Wilson is estopped from claiming that there
9  was no contract entered into and that he does not legally owe Love
10  the money.

11  B.  Assuming, Arguendo, A Contract As Alleged by Love, Any Such
12      Contract Is Voidable And Has Been Rescinded By Wilson's
13      Conservator

14  "A conveyance or other contract of a person of unsound mind,
15  but not entirely without understanding, made before his incapacity
16  has been judicially determined, is subject to rescission."  Cal.
17  Civil Code § 39.  On March 9, 1992, Jerome S. Billet was appointed
18  conservator of the Person and Estate of Brian Wilson.

19  Love admits Wilson was not of sound mind at the time the
20  alleged contract was made.  Love Depo. in the Wilson Litigation,
21  vol. 1, 105:25 - 106:23, 204:21; Love Depo. vol. 10, 1672:7-13. [4]
22  Assuming arguendo, a contract was made by Wilson through his
23  attorneys with Love to pay Love the monies that Love was owed,
24  which Wilson emphatically denies, that contract was voidable.  With

25  [4]  True and correct copies of the deposition excerpts
26  referenced in this Trial Brief are attached to the Declaration
    of Douglas L. Day which accompanied Wilson's Motion For
27  Partial Summary Judgment Of Plaintiff's Eleventh, Eighteenth
    and Nineteenth Claims For Relief.
28

W81-1.2.DLD.6.1

-15-

the establishment of a conservatorship for Wilson in March, 1992, and the Conservator's refusal to recognize Love's claims, that contract was effectively rescinded.

Notice of rescission need not be in any particular form. Rescission "must simply indicate the intention of the party rescinding to treat the contract as ended." 1 Witkin, <u>Summary of California Law</u> (9th ed. 1987) Contracts, §887 at p. 796. In Wilson's Answer to the Fourth Amended Complaint, Wilson's Conservator made it clear that if the alleged contract for payment of monies owed was made with Love, Wilson was incompetent at the time and lacked the capacity to enter into a valid contract, and further that any such agreement was not recognized by the Conservator. <u>See</u> Answer to Fourth Amended Complaint, filed October 7, 1993 at ¶ 194. <u>See also</u>, <u>Wilson v. Lewis</u>, 106 Cal. App. 3d 802, 809, 165 Cal. Rptr. 396 (1980) ("If the facts exist that justify rescission by one party, and he declares a rescission in <u>some effectual manner</u>, he terminates the contract").

C.   <u>There Was No Agreement Between Wilson and Love As To The Essential Terms Of The Agreement</u>

In order to establish an enforceable contract, Love must be able to establish that there was a "meeting of the minds" between himself and Wilson on "the essential features of the agreement." <u>Robinson & Wilson, Inc. v. Stone</u>, 35 Cal. App. 3d 396, 407, 110 Cal. Rptr. 675 (1974)(Written contract to provide labor and materials to construct "standard" medical suites, unenforceable for indefiniteness where no plans or specifications); quoting <u>Ellis v. Klaff</u>, 96 Cal. App. 2d 471, 478, 216 P.2d 15 (1950) (Agreement to build "building or buildings" on leased land too indefinite to be

1  enforced).

2  "To be enforceable, a promise must be definite enough that a
3  court can determine the scope of the duty and the limit of
4  performance must be sufficiently defined to provide a rational
5  basis for the assessment of damages." <u>Ladas v. California State</u>
6  <u>Auto. Assoc.</u>, 19 Cal. App. 4th 761, 770, 23 Cal. Rptr. 2d 810
7  (1993) (Contract to pay salesmen commissions "in keeping with
8  industry standards" so as to maintain "parity", is too vague to be
9  an enforceable contractual obligation).

10  "Where a contract is so uncertain and indefinite that the
11  intention of the parties in material particulars cannot be
12  ascertained, the contract is void and unenforceable." <u>Id.</u>; quoting
13  <u>California Lettuce Growers v. Union Sugar Co.</u>, 45 Cal. 2d 474, 481,
14  289 P.2d 785 (1955).

15  1.  <u>The Alleged Contract Did Not Specify The Amount Of Money</u>
16      <u>To Be Paid, Nor Which Songs Wilson Was To Compensate Love</u>
17      <u>For</u>

18  Love's own evidence is undisputed that no agreement was
19  reached as to the exact or any other <u>amount</u> of "monies" to be paid
20  Love for any additional songs he many have "co-authored," or the
21  "copyright interests" he was to receive.  Nor was there any
22  agreement as to what additional songs the agreement would deal
23  with.  The trier of fact would have to supply <u>all</u> of the essential
24  terms of this alleged contract in order to enforce it and assess
25  damages.

26  Love testified that neither John E. Mason, Jr. ("Mason"),
27  James P. Tierney ("Tierney") nor James J. Little ("Little") ever
28  promised him a <u>specific</u> dollar amount, nor <u>specified which songs</u>

payment would be made for. Love Deposition vol. 9, 95:19-22; Love Depo. vol. 10, 1657:10-16; 1682:14-21; 1688:3-6; 1689:19 - 1690:14; Robert Kory Depo. vol. 1, 175:20 - 176:11; Kory Depo. vol. 2, 249:7 - 250:14; see, also Mason Depo. vol. 2, 219:6 - 221:24.

Robert Kory ("Kory"), Love's personal attorney, also confirmed during his deposition that no agreement was ever reached as to what payment was to be made to Love. And while Love alleges that he was promised that the copyrights would be recovered for his benefit, Kory has testified that, in fact, the promise was simply to give Love "fair value," which was to be determined after future lengthy, complex negotiations which never were concluded. Kory Depo. vol. 2, 249:3-22.

Love's bare allegation he was to be paid "all monies owed" him must be read in conjunction with all the evidence and testimony which confirms that no agreement was ever reached as to what, if anything, Love was "owed." See 4th Am. Compl. at ¶ 178; Love Depo. vol. 9, 95:19-22; Love Depo. vol. 10, 1657:10-16; 1682:14-21; 1688:3-6; 1689:19 - 1690:14; Love Depo. vol. 11, 1925:19 - 1926:5; Kory Depo. vol. 1, 175:20 - 176:11; Kory Depo. vol. 2, 249:7 - 250:14; see, also Mason Depo. vol. 2, 219:6 - 221:24.

Love has also testified that throughout the decades Wilson has not recognized Love's claim to co-authorship of many of the additional songs Love now claims co-authorship of. Love Depo. in the Wilson Litigation, vol. 2, 312:5 - 314:13; Love Depo. vol. 4, 606:20 - 607:5; see, also, Stephen Love Depo. 33:1 - 34:11.

The undisputed evidence, even when viewed in Love's favor, falls far short of a "promise . . . definite enough . . . to provide a rational basis for the assessment of damages." Ladas,

1  _supra_, 19 Cal. App. 4th 761, 770.

2         2.    There Was No "Meeting of The Minds" As To The Terms Or
3               Purpose Of The Alleged Contract

4         Both of Wilson's attorneys, Tierney and Mason, confirm that
5  there was simply an undertaking to pursue negotiations on Love's
6  claim to "California Girls" together with Wilson's claim to a
7  producer's royalty for Wilson's production efforts on all the major
8  Beach Boys' hit records.  Those negotiations never resulted in an
9  agreement.  Tierney Depo. vol. 2, 274:4 - 275:1; Mason Depo. vol.
10  2, 219:10 220:8.

11        In fact, Tierney's and Mason's testimony is that no agreement
12  was ever reached because Love and his representatives failed to
13  negotiate in good faith.  Once negotiations commenced on the issue
14  of "California Girls," Love then claimed to have co-written an
15  additional two, then five, then 25 and ultimately scores of songs.
16  Mason Depo. vol.4, 655:4 - 657:4.

17        3.    There was no consideration for the alleged promise

18        Even if the alleged promise was made there was no
19  consideration given by Love to make the promise enforceable because
20  Love had a legal duty to testify truthfully at his deposition in
21  the Wilson Litigation.

22  D.    An Agreement To Agree Is Not Enforceable Under California Law

23        The evidence is overwhelming and undisputed that Wilson, Love
24  and the other Beach Boys tried to reach an agreement on a
25  settlement and resolution regarding a multitude of outstanding
26  respective claims of all the Beach Boys but failed to do so.  It is
27  well-settled that an _agreement to agree_ in the future is simply
28  unenforceable under California law.    _Banco do Brazil S.A. v._

W81-1.2.DLD.6.1

1 Latian, Inc., 234 Cal. App. 3d 973, 1015 n.55, 285 Cal. Rptr. 870

2 (1991); Kruse v. Bank of America, 202 Cal. App. 3d 38, 59-60, 248

3 Cal. Rptr. 217 (1988).

4     Kory has testified that Wilson's attorney only agreed that if

5 Love testified truthfully at his deposition, Wilson's

6 representatives would agree to embark on a complicated "process" to

7 try and resolve Love's claims to "California Girls" and possibly

8 other songs. This "process" was never completed. Kory, further

9 testified that the agreement to be reached would not "become

10 operative" or "effective" until the parties reached a "resolution

11 of all the old issues between Brian and Mike," including Wilson's

12 own claims to a producer's fee. See Kory Deposition. Excerpt No.

13 1 to Ex. 60 to Wilson Reply filed February 28, 1994 to Love's

14 Opposition to Wilson's Motion for Reconsideration ("Wilson Reply").

15 E.   Taking The Record As Whole, Love's Eighteenth Claim Fails As

16      A Matter of Law

17     Contrary to Love's present claim that he was promised money

18 from the Wilson Litigation, Love repeatedly testified at his 1991

19 deposition in the Wilson Litigation that there was no agreement

20 between Wilson and himself that he would benefit from the Wilson

21 Litigation. Love has tried to reconcile his 1991 sworn denials of

22 the existence of any agreement or any promise with his present

23 contrary allegations of the existence of a 1989-90 oral contract,

24 by offering at least three alternative versions of the "truth."[5]

25

26
5   First, Love argued that he testified truthfully in 1991
that he was not to receive a "financial benefit" from the
Wilson Litigation because he was "promised" "copyrights."

27 Love's Supp. Memo. in Opposition to MSK's Motion for
Appointment of a Special Master, filed Feb. 28, 1993 at 2, ll.

28 20-25.   Second, since Love does allege he was promised
"monies," he then urged that when he was asked at his March,

1    The testimony of Kory, establishing only an unenforceable
2    agreement to agree, and Kory's conflicting testimony as to what
3    transpired at the alleged break at Love's deposition, must be
4    considered in light of Love's changing testimonies, and the
5    deposition transcript itself.   When so considered, Love's third
6    version of the "truth" does not raise a triable issue of fact given
7    the record as a whole.

8    Love alleges that he was promised an unspecified portion of a
9    recovery in the Wilson Litigation.   However, in 1991 under oath,
10   Love denied such a contract existed.   A witness cannot create a
11   triable issue by contradicting his prior, sworn admissions.   <u>Jurado</u>
12   <u>v. Eleven Fifty Corp.</u>, 813 F.2d 1406, 1410 (9th Cir. 1987); <u>Foster</u>
13   <u>v. Arcata Assoc., Inc.</u>, 772 F.2d 1453, 1462 (9th Cir. 1985), <u>cert.</u>
14   <u>denied</u>, 475 U.S. 1048.·

15   Any slight chance that a jury could find for Love if the
16   evidence is limited only to Love's testimony, is dispelled when the
17   record is taken as whole.

18   Even when a witness submits sworn testimony to support his
19   allegations, he may not be able to create a triable issue if the
20   record, taken as a whole, makes his claim implausible.   <u>Matsushita</u>
21   <u>Elec. Industr. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587,

22

23   1991 deposition whether he would benefit from Wilson's case,
     Wilson's attorney, Little, took a break and told him and his
24   attorney, Kory, in the hallway, to deny that he had any
     interest in the case.   And finally, last December, 1993 Love
25   claimed that during this phantom break during the questioning
     -- which the transcript shows was uninterrupted -- Kory
26   telephoned Wilson's other attorney, Tierney, who counseled
     that the "promise" to Love was "independent" of the Wilson
27   Litigation.   <u>See</u> Declaration of Robert Kory, filed Dec. 11,
     1993 at para. 5.   <u>But see</u> Kory Depo. Excerpt No. 2 to Ex. 60
28   to Wilson's Reply.   (No mention of the supposed Tierney
     telephone conversation during the break.)

W81-1.2.DLD.6.1

-21-

106 S.Ct. 1348, 89 L.Ed. 538 (1986). This is such a case.

The deposition testimony of Mason, Wilson's transactional attorney in 1989-90, and his litigation counsel at that time, Tierney, indicates that although Love and other members of the Beach Boys attempted to negotiate a global resolution of all of their respective issues in 1989-90, no agreement was _ever_ reached. See Tierney Depo. vol. 2, 274:4 - 275:1; Mason Depo. vol. 2, 219:10 220:8; Love Depo. vol. 11, 1925:19 - 1926:5.

As to Love's three or more explanations for his 1991 sworn denials that any agreement was reached, his last two explanations hinge on Little's alleged request for a break in Love's 1991 deposition testimony when the issue of Love's financial benefit from the Wilson Litigation "first arose." See Kory Declaration filed Dec. 11, 1993 at para. 5. The deposition transcript renders these last two explanations impossible because the transcript is clear that the questioning was unbroken, with a break preceding any question regarding Love's potential benefit from Wilson's case. Love Depo. in the Wilson Litigation, vol. 1, 171-72.

In addition, Kory's subsequent declaration that during this "break" he telephoned Tierney, who counseled Love how to answer questions regarding the promise made to Love, is implausible given that, when deposed in 1993, Kory testified _only_ that Little took Kory and Love out in the hallway and told Love what to say, and Kory never mentioned any telephone call to Tierney. See Kory Depo. Excerpt No. 2 to Ex. 60 to Wilson Reply.

Accordingly, when the record is taken as a whole, no reasonable jury could believe Love's newest and fatally-flawed explanation.

F.   Love Cannot Establish The Elements Necessary For A Claim Of Promissory Estoppel

The Eighteenth Claim requests, in the alternative, recovery based upon promissory estoppel. The required elements of a claim for promissory estoppel under California law are: (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." Laks v. Coast Fed. S. & L. Assoc., 60 Cal. App. 3d 885, 890, 131 Cal. Rptr. 836 (1976).

1.   The Alleged Promise Is Ambiguous On Its Terms

Love alleges that Wilson promised to pay Love all monies owed him. This term is ambiguous on its face. The promise is ambiguous given that Love claims that he co-authored 48 additional songs that he was never credited for, and that he was entitled to publishing income for all 79 of the songs he claimed he co-authored, combined with Wilson's repeated denials of these allegations.

The alleged promise is ambiguous as to the exact amount of money that was to be paid, and ambiguous as to what songs the money was to be paid for.

2.   Love's Reliance, If Any, Was Unreasonable

Love's claimed reliance on the alleged promises was not reasonable. While Wilson may have entered into good faith negotiations to resolve the dispute as to Love's claim of co-authorship on one song, "California Girls", Wilson never acknowledged that Love was entitled to the copyright of that song, nor that Love was owed money on the other 47 songs Love has made claim to.

W81-1.2.DLD.6.1

-23-

1    In addition, Love has admitted that at the time of these
2    alleged promises, Wilson was not of sound-mind, and that he could
3    not rely on any of the promises that were made.  Love Dep. in the
4    Wilson Litigation, vol. 1, 105:25 - 106:23, 204:21-22; Love Depo.
5    vol. 10, 1672:7-13.  It was not just that Love knew that Wilson was
6    not of sound mind and could not be relied upon, Love testified that
7    he did not believe the promises that were made to him.  Love Depo.
8    in the Wilson Litigation, vol. 2, 313:2-25.

9    If Love relied upon the alleged representations of a known
10   incompetent, his reliance was unreasonable, accordingly Love's
11   claim of promissory estoppel is without merit.

12   3.   Love Did Not Rely On The Alleged Promise To His Detriment

13   Assuming arguendo a promise was made to Love, and Love, in
14   justifiable reliance on that promise, did not intervene in the
15   Wilson Litigation, Love still cannot claim or prove that he was
16   injured by his reliance.  Love brought a lawsuit against the same
17   parties whom were named as defendants in the Wilson Litigation, and
18   Love settled with them for a substantial amount of money.  Love has
19   therefore suffered no damages.

20   As to Love's claims against Wilson, Love could have brought
21   these claims if he had joined in the Wilson Litigation, but the
22   claims would have been barred by the statute of limitations, just
23   as they are in this case.  The additional two years wait to sue
24   Wilson did not cause any statute of limitations to run; those all
25   tolled over twenty years ago as the Court held in its Order.

26   Promissory estoppel is an equitable remedy and if Love cannot
27   prove any injury, the Court cannot use equity to enforce an
28   unenforceable promise.

W81-1.2.DLD.6.1

-24-

4.   An Agreement To Agree Cannot Be Enforced On A Promissory
     Estoppel Theory

An agreement to agree cannot be enforced on a promissory
estoppel theory.  Laks, supra, 60 Cal. App. 3d 885, 892-93, ("The
law does not provide a remedy for breach of an agreement to agree
in the future, and the court may not speculate upon what the
parties will agree"), quoting Burgess v. Rodom, 121 Cal. App. 2d
71,73, 262 P.2d 335 (1953).  As a result, Love's promissory
estoppel theory also fails because the undisputed evidence
establishes no enforceable promise was made to Love.

G.   Even If Wilson's Attorneys Made Promises To Love, Those
     Promises Do Not Create A Valid Oral Contract Binding Wilson

Assuming arguendo, that Wilson's attorneys made promises to
Love regarding Wilson's recovery in the Wilson Litigation, such
promises were not authorized by Wilson and were beyond the scope of
their employment as Wilson's legal counsel.  Without any factual
support whatsoever, Love alleges that Wilson's attorneys told him
that the Wilson Litigation was being pursued to recover both
Wilson's and Love's copyrights to the songs and that Wilson would
pay Love, from the proceeds of that litigation, the monies owed
him.  Love further alleges that he relied on this representation.

1.   An Attorney Does Not Have Plenary Power To Bind His
     Client To A Contract

The attorneys who allegedly made such promises, which Wilson
denies were ever made, were never given the authority to make such
a promise.  An attorney cannot bind the client to a contract
without the client's authorization.  See Blanton v. Womancare, 38
Cal. 3d 396, 407-408, 212 Cal. Rptr. 151 (1985) ("Absent express

1  authority, it is established that an attorney does not have implied
2  plenary authority to enter into contracts on behalf of his
3  client").

4      Wilson never gave such authorization.  Furthermore, Love
5  cannot in good faith argue that he believed that Wilson agreed to
6  pay him money for the copyrights on 79 songs and songwriter
7  royalties on the 48 songs in dispute.

8      Given the fact that Wilson has <u>never</u> acknowledged that Love
9  was entitled to the copyright of any of the songs and the fact that
10  Wilson never entertained discussions with Love as to improper
11  crediting on any song other than "California Girls," Love could not
12  have reasonably relied upon the alleged promises by Wilson's
13  attorneys.

14      The discussions regarding "California Girls", and the proposed
15  agreement to settle <u>all</u> disputes, specifically focused as to Love
16  only on the issue of Love's claim for additional songwriter's
17  royalties; neither Wilson nor Love thought that Love was entitled
18  to an interest in the copyright on "California Girls", or the
19  monies that resulted from such copyright ownership.

20      2.   The Alleged Promises Were Outside The Scope Of Wilson's
21           Attorneys' Authority, Contravening The Professional Rules
22           Of Conduct for Attorneys

23      Love contends that some of his deposition testimony in the
24  Wilson Litigation regarding Wilson's ownership of the copyright was
25  "colored" by the promises that Love would financially benefit from
26  the successful outcome of the that litigation.  Any such promises
27  of payment made to Love by Wilson's attorneys would have been made
28  in violation of Professional Rules of Conduct promulgated by the

W81-1.2.DLD.6.1

-26-

1   State Bar of California. It would be unjust to hold the client,
2   Wilson, responsible for any of his former attorney's wrongful
3   conduct, which is specifically prohibited by Rules of the State
4   Bar.

5   Rule 5-310 of the Professional Rules of Conduct provides that
6   an "attorney shall not [d]irectly or indirectly pay, offer to pay,
7   or acquiesce in the payment of compensation to a witness contingent
8   upon the content of the witness' testimony or the outcome of the
9   case." This is exactly what Love contends Wilson's attorneys did,
10  they promised Love compensation for both his testimony, and for not
11  joining in the suit contingent on the outcome of the case.

12  H.   The Eighteenth Claim Must Fail As A Matter of Law

13  For all and the reasons set forth above, a judgment as a
14  matter of law should be entered in Wilson's favor as to Love's
15  Eighteenth Claim for breach of contract/promissory estoppel.

16                                  V.

17            THERE IS NOTHING LEFT TO THE NINETEENTH

18                  CLAIM FOR UNJUST ENRICHMENT

19  The Court's Order holds that Love's Nineteenth Claim is based
20  solely on his Eighteenth Claim. See p. 21 of the Order. As a
21  result, if Love's Eighteenth Claim against Wilson falls subject to
22  a judgment as a matter of law, or is otherwise lacking merit, the
23  Nineteenth Claim must also fail since it adds nothing of substance
24  to Love's pleading. See e.g., Jefferson v. J.E. French Co., 54
25  Cal. App. 2d 717, 719, 7 Cal. Rptr. 899, 355 P.2d 643 (1990)
26  ("(T)he nature of the right sued upon, not the form of the action
27  or the relief demanded, determines the applicability of the statute
28  of limitations"; claim for an "accounting" barred by two-year

W81-1.2.DLD.6.1

-27-

1    statute because premised on oral contract); <u>Pena v. Los Angeles</u>, 8
2    Cal. App. 3d 257, 262, 87 Cal. Rptr. 326 (1970) (Declaratory relief
3    barred where underlying substantive claims barred).

4    Moreover, Love's recovery of $1,800,000.00 in this case,
5    combined with the now-uncontestable validity of Love's transfer of
6    his copyright interests, precludes any attempt to prove Wilson was
7    unjustly enriched at Love's expense.

8                                    VI.

9              NO PUNITIVE DAMAGES CAN BE AWARDED IN THIS CASE

10   A.    There Is No Basis For An Award Of Punitive Damages

11   Since Love's Eleventh Claim fails to allege the elements of a
12   fraud claim, and since Love's other two claims do not sound in
13   tort, there is no basis for a jury to award punitive damages in
14   this case even if Love's case is not disposed by way of a judgment
15   as a matter of law.

16   B.    Punitive Cannot Be Awarded Against An Incompetent

17   A person who has been declared incompetent or for whom a
18   conservator has been appointed, does not have the ability to resist
19   fraud or undue influence. For policy reasons, Civil Code section
20   41 provides that, "a person of unsound mind, of whatever degree, is
21   civilly liable for a wrong done by the person, but is not liable
22   for exemplary damages unless at the time of the act the person was
23   capable of knowing that the act was wrongful."

24   Thus, Love is barred from recovering punitive damages from
25   Wilson in this litigation.

26

27

28

W81-1.2.DLD.6.1

-28-

VII.

EVIDENTIARY ISSUES

A.   All Testimony And Evidence Relating To Love's Dismissed Claims Should Be Excluded At Trial

This Court's Order has eliminated Love's First-Fourth, Seventh-Ninth, Thirteenth-Fourteenth and Sixteenth-Seventeenth Claims from this action. Love should not be allowed to bring through the back door of his few remaining claims all the events going back over three decades relating to Love's now dismissed claims for songwriting and publishing royalties.

Such testimony and evidence would not only be irrelevant under Fed. Rules of Evidence 401, but also unfairly prejudicial to Wilson and entirely lacking in probative value under Fed. Rules of Evidence 403.

Moreover, such evidence and testimony would only serve to hopelessly mislead and confuse the jury at the same time that it would lengthen the trial by a tenfold.

B.   Landy's Testimony Must Be Excluded At Trial

1.   Wilson's Communications With Landy Are Privileged Under The Psychotherapist-Patient Privilege

The nature and scope of privileged communications are governed by state law. Fed. Rules Evid. 501. Under California law, communications between a patient and his/her psychotherapist made during the course of the patient-psychotherapist relationship and made in confidence are privileged under California Evidence Code section 1012. It is the patient's intent which controls; if the patient intends that the communication be confidential, it does not matter whether in fact it is indeed confidential. Id. It is the

W81-1.2.DLD.6.1

-29-

1  patient who holds the privilege, but the privilege can be claimed
2  by either the patient, a person authorized by the patient, or the
3  person who was the psychotherapist at the time of the
4  communication.  Evid. Code §§1013 and 1014.

5      Landy was Wilson's psychotherapist.  Wilson's relationship
6  with Landy was one for professional purposes and all communications
7  Wilson made to Landy were made "in the course of that relationship
8  and in confidence."  Evid. Code §1012.  Accordingly, all of Landy's
9  testimony regarding communications with Wilson must be excluded
10 from trial.

11      2.    Landy Was Not Wilson's Agent

12     Landy's allegedly fraudulent communications to Love must be
13 deemed inadmissible under Federal Rule of Evidence 403.  Rule 403
14 provides for the exclusion of otherwise relevant evidence where the
15 probative value of the evidence "is substantially outweighed by the
16 danger of unfair prejudice, confusion of the issues, or misleading
17 the jury . . . "

18     Landy took advantage of Wilson's susceptible nature and
19 exercised undue influence over Wilson.  Any statements Landy may
20 have made to Love or others, purportedly on Wilson's behalf, were
21 not on Wilson's behalf.  Wilson cannot be held liable for Landy's
22 fraud, if any; Landy was not Wilson's agent nor did Wilson have the
23 capacity to ratify any of Landy's conduct.  Allowing Landy's
24 testimony at trial would provide little probative value as to
25 Wilson's conduct toward Love, while it would create a substantial
26 danger of undue prejudice to Wilson.

27 C.    Love's Testimony Is Admissible

28     Love gave sworn testimony under oath at his depositions during

W81-1.2.DLD.6.1

-30-

1   the Wilson Litigation.   These sworn statements are admissible in
2   the present litigation.   First, these statements are declarations
3   of a party opponent and admissible under Federal Rule of Evidence
4   801(d)(2).   These statements may also be used to impeach Love at
5   the present trial.   Fed. Rule Evid. 613.

6   Love has argued that his prior testimony should be excluded
7   under Rule 804(b)(1).   However, Rule 804(b)(1) does not, and
8   cannot, support that proposition.   Rule 804(b)(1) provides for the
9   admission   of   certain   statements   which   would   otherwise   be
10   inadmissible hearsay, because the statements possess such qualities
11   that would make them reliable whether the declarant is available or
12   unavailable for cross-examination.   Love appears to argue that his
13   prior   testimony   does   not   fall   under   the   category   804(b)(4),
14   however,   Love   the   declarant   is   available   as   a   witness,   and
15   moreover, these statements are admissions by a party opponent and
16   admissible under 801(d)(2).

17   D.   Wilson's Settlement Amount From The Prior Wilson Litigation
18        Against Irving Music Must Be Excluded From Trial

19   Federal Rule of Evidence 408 provides that evidence of a
20   settlement "is not admissible to prove liability or invalidity of
21   the claim or its amount." (Emphasis added.)   The dollar amount of
22   Wilson's settlement in the Wilson Litigation cannot be used as
23   evidence of the value of Love's claim against Wilson.   And any
24   plausible reason Love may have for using the settlement amount as
25   evidence would be substantially outweighed by the prejudicial
26   effect it would have on Wilson.   Fed. Rule Evid. 403.

27   E.   Wilson's Pleadings from Prior Litigation Are Not Binding
28        Admissions

W81-1.2.DLD.6.1

-31-

1    Love will attempt to admit into evidence Wilson's pleadings
2  and testimony from the prior Wilson Litigation as binding
3  evidentiary admissions.  However, there is no merit to Love's
4  position.

5    Binding evidentiary admissions are only those admissions made
6  pursuant to Federal Rules of Civil Procedure Rule 26(b).  And such
7  admissions are binding only as to the action for which it was made.
8  See Fed. R. Civ. Proc. 36(b).

9    Pleadings and testimony from a prior action can be admitted
10 into evidence as a statement by a party opponent under Federal Rule
11 of Evidence 801(d)(2) or for impeachment purposes under Rule 613.
12 However, they are not judicial admissions and thus have no binding
13 effect.  See Derby & Co., Inc. v. Seaview Petroleum Co., 756 F.
14 Supp. 868 (E.D. Pa. 1991); Parrixsh v. Atchison, T. & S. F. R. Co.,
15 152 F. Supp. 158 (D. Cal. 1957).

16 F.   Additional Evidentiary Problems

17   The following additional evidentiary problems are raised for
18 the Court's consideration in Motions In Limine filed by Wilson.
19 These include:

20   1)   Motion to exclude the dollar amount of Wilson's
21        settlement of the Wilson Litigation; and to exclude
22        Wilson's settlement discussions with Love;

23   2)   Motion for admissibility of Love's prior testimony;

24   3)   Motion for admissibility of Love's settlement in this
25        case with A&M and MSK;

26   4)   Motion to exclude evidence of Love's defamation action;
27        and to exclude evidence of Wilson's book "Wouldn't It Be
28        Nice;"

W81-1.2.DLD.6.1

-32-

1       5)   Motion to exclude evidence of statements made by Wilson's

2            former attorneys to Love in connection with the Wilson

3            Litigation; and statements Dr. Landy made to Love in

4            connection with that same action;

5       6)   Motion to exclude evidence that Wilson is responsible for

6            the alleged oral contract with Love entered into by

7            Wilson's counsel in the Wilson Litigation; and

8       7)   Motion for prefatory cautionary instruction regarding

9            Wilson's trial testimony.

10

11   Dated:   April 19, 1994              J. MICHAEL CROWE
                                          DOUGLAS L. DAY
12                                        CROWE & DAY

13

14

15                          By:_____

16                             Douglas L. Day
                               Attorneys for Defendant BRIAN
17                             WILSON, by and through JEROME
                               S. BILLET, Conservator of the
18                             Person and Estate of Brian
                               Wilson

19

20

21

22

23

24

25

26

27

28

W81-1.2.DLD.6.1
                                    -33-

1 | **PROOF OF SERVICE BY MAIL**

2 | **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3 |     I am employed in the County of Los Angeles, State of

4 | California. I am over the age of 18 and not a party to the within

5 | action; my business address is 100 Wilshire Boulevard, Suite 200,

6 | Santa Monica, CA 90401-1113.

7 |     On April 19, 1994, I served the foregoing document described

8 | as **TRIAL BRIEF OF DEFENDANT BRIAN WILSON** on the interested parties

9 | in this action by placing a true copy thereof enclosed in a sealed

10 | envelope and with postage thereon fully prepaid in the United

11 | States mail at 100 Wilshire Boulevard, Suite 200, Santa Monica, CA

12 | 90401-1113 addressed as follows:

13 | **SEE ATTACHED LIST**

15 | XXX  BY MAIL

16 |     I declare that I am employed in the office of a member of the

17 | bar of this Court at whose direction the service was made.

18 |     Executed this _19_ day of _April_ 1994, at Santa Monica,

19 | California.

21 | Richelle Lawson

W81-1.2.DLD.6.1

-34-

1

**PROOF OF SERVICE**
**LOVE V. WILSON (W81-1)**
Case No. 92 4594 WJR (Tx)

2

3

Michael J. Flynn, Esq.                    Attorneys for Plaintiff
4   Philip H. Stillman, Esq.
FLYNN, SHERIDAN & TABB
5   P. O. Box 1668
6125 El Tordo
6   Rancho Santa Fe, CA 92067
(619) 756-5824
7   (619) 756-1575 - FAX

8   ///

9   ///

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W81-1.2.DLD.6.1

-35-