J. MICHAEL CROWE [Bar No. 043297]
DOUGLAS L. DAY [Bar No. 092581]
CROWE & DAY
100 Wilshire Boulevard, Suite 200
Santa Monica, CA  90401-1113
(310) 917-4500

Attorneys for Defendant BRIAN WILSON,
by and through JEROME S. BILLET,
Conservator of the Person and Estate
of Brian Wilson

**ORIGINAL**

FILED
CLERK, U.S. DISTRICT COURT

MAY 2 0 1994

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL E. LOVE,<br><br>             Plaintiff,<br><br>v.<br><br>BRIAN D. WILSON, an<br>individual, by and through<br>JEROME S. BILLET in his<br>representative capacity as<br>Conservator of the Person and<br>Estate of BRIAN WILSON,<br><br>             Defendant. | CASE NO. 92 4594 WJR (Tx)<br><br>AMENDED TRIAL BRIEF OF<br>DEFENDANT BRIAN WILSON<br><br><br><br><br><br><br>TRIAL DATE:  May 24, 1994<br>TIME:  9:30 a.m.<br>COURTROOM:  10<br>The Honorable William J. Rea |

///

///

///

///

///

///

///

///

///

# TABLE OF CONTENTS

**Page**

Table of Authorities . . . . . . . . . . . . . . . . . . . iv

I.    INTRODUCTORY STATEMENT . . . . . . . . . . . . . . . . 1

II.   SUMMARY OF ARGUMENT  . . . . . . . . . . . . . . . . . 2

      A.   The Eighteenth Claim Is Without Merit . . . . . . . 2

      B.   The Nineteenth Claim For Unjust Enrichment
           Must Fall At the Same Time As The Eighteenth
           Claim . . . . . . . . . . . . . . . . . . . . . . . 6

III. THE EIGHTEENTH CLAIM IS SUBJECT TO A JUDGMENT AS A
     MATTER OF LAW  . . . . . . . . . . . . . . . . . . . . 7

      A.   Summary of Love's Eighteenth Claim For Breach
           Of Contract/Promissory Estoppel MSK . . . . . . . . 7

      B.   Assuming, Arguendo, A Contract As Alleged By
           Love, Any Such Contract Is Voidable And Has
           Been Rescinded By Wilson's Conservator  . . . . . . 9

      C.   There Was No Agreement Between Wilson and
           Love As To The Essential Terms Of The
           Agreement . . . . . . . . . . . . . . . . . . . .  10

           1.    The Alleged Contract Did Not Specify The
                 Amount Of Money To Be Paid, Nor Which
                 Songs Wilson Was To Compensate Love For  . . . 11

           2.    There Was No "Meeting of The Minds" As
                 To The Terms Or Purpose Of The Alleged
                 Contract . . . . . . . . . . . . . . . . . .  13

      D.   An Agreement To Agree Is Not Enforceable
           Under California Law  . . . . . . . . . . . . . .  13

      E.   The Corrigan/Kory Correspondence Cannot
           Support A Contract  . . . . . . . . . . . . . . .  14

           1.    Kory's Letter Was Not An Acceptance  . . . . . 15

           2.    The Corrigan Letter Cannot Revive
                 A Time Barred Debt . . . . . . . . . . . . .  17

      F.   There Was No Consideration For Wilson's
           Alleged Promise To Pay  . . . . . . . . . . . . .  17

      G.   Taking the Record As Whole, Love's Eighteenth
           Claim Fails As A Matter of Law  . . . . . . . . .  18

W81-1.2.DLD.22.TRIALBRI.3

H.   Love Cannot Establish The Elements Necessary
     For A Claim of Promissory Estoppel  . . . . . . . .   22

     1.   The Alleged Promise Is Ambiguous On Its
          Terms  . . . . . . . . . . . . . . . . . . . .   22

     2.   Love's Reliance, If Any, Was
          Unreasonable . . . . . . . . . . . . . . . . .   23

     3.   Love Did Not Rely On The Alleged Promise
          To His Detriment . . . . . . . . . . . . . . .   24

     4.   An Agreement To Agree Cannot Be Enforced
          On A Promissory Estoppel Theory  . . . . . . .   25

     5.   Even If Wilson's Attorneys Made Promises
          To Love, Those Promises Do Not Create
          A Valid Oral Contract Binding Wilson . . . . .   25

     6.   An Attorney Does Not Have Plenary Power To
          Bind His Client To A Contract  . . . . . . . .   25

     7.   The Alleged Promises Were Outside The
          Scope Of Wilson's Attorneys' Authority,
          Contravening The Professional Rules Of
          Conduct For Attorneys  . . . . . . . . . . . .   27

I.   The Eighteenth Claim Must Fail As
     A Matter Of Law . . . . . . . . . . . . . . . . . .   28

IV.  THERE IS NOTHING LEFT TO THE NINETEENTH
     CLAIM FOR UNJUST ENRICHMENT  . . . . . . . . . . . .   28

V.   EVIDENTIARY ISSUES . . . . . . . . . . . . . . . . .   29

A.   All Testimony And Evidence Relating To
     Love's Dismissed Claims Should Be
     Excluded At Trial . . . . . . . . . . . . . . . . .   29

B.   Landy's Testimony Must Be Excluded At Trial . . . .   30

     1.   Wilson's Communications With Landy Are
          Privileged Under The Psychotherapist-Patient
          Privilege  . . . . . . . . . . . . . . . . . .   30

     2.   Landy Was Not Wilson's Agent . . . . . . . . .   31

C.   Love's Testimony Is Admissible  . . . . . . . . . .   31

D.   Wilson's Settlement Amount From The Prior
     Wilson Litigation Against Irving Music
     Must Be Excluded From Trial . . . . . . . . . . . .   32

E.   Wilson's Pleadings From Prior Litigation
     Are Not Binding Admissions  . . . . . . . . . . . .   32

1

F.   Additional Evidentiary Problems . . . . . . . . . . . 33

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## Cases

Page

Banco do Brazil S.A. v. Latian, Inc.
234 Cal. App. 3d 973,
285 Cal. Rptr. 870 (1991) . . . . . . . . . . . . . . . . . . 14

Blanton v. Womancare
38 Cal. 3d 396,
212 Cal. Rptr. 151 (1985)   . . . . . . . . . . . . . . . . . 26

Burgess v. Rodom
121 Cal. App. 2d 71,
262 P.2d 335 (1953) . . . . . . . . . . . . . . . . . . . . . 25

California Lettuce Growers v. Union Sugar Co.
45 Cal. 2d 474,
289 P.2d 785 (1955) . . . . . . . . . . . . . . . . . . . . . 11

Derby & Co., Inc. v. Seaview Petroleum Co.
756 F.Supp. 868 (E.D. Pa. 1991) . . . . . . . . . . . . . . . 33

Doria v. AFL-CIO
196 Cal. App. 2d 22,
16 Cal. Rptr. 429 (1961)   . . . . . . . . . . . . . . . . . . 18

Ellis v. Klaff
96 Cal. App. 2d 471,
216 P.2d 15 (1950)   . . . . . . . . . . . . . . . . . . . . . 10

Foster v. Arcata Assoc., Inc.
772 F.2d 1453 (9th Cir. 1985),
cert. denied 475 U.S. 1048 . . . . . . . . . . . . . . . . . . 21

Jefferson v. J.E. French Co.
54 Cal. App. 2d 717,
7 Cal. Rptr. 899,
355 P.2d 643 (1990) . . . . . . . . . . . . . . . . . . . . . 28

Jurado v. Eleven Fifty Corp.
813 F.2d 1406 (9th Cir. 1987) . . . . . . . . . . . . . . . . 21

Kruse v. Bank of America
202 Cal. App. 3d 38,
248 Cal. Rptr. 217 (1988) . . . . . . . . . . . . . . . . . . 14

Ladas v. California State Auto. Assoc.
19 Cal. App. 4th 761,
23 Cal. Rptr. 2d 810 (1993) . . . . . . . . . . . . . . . 10-11

Laks v. Coast Fed. S. & L. Assoc.
60 Cal. App. 3d 885,
131 Cal. Rptr. 836 (1976) . . . . . . . . . . . . . . . . 22, 25

Matsushita Elec. Industr. Co., Ltd. v. Zenith Radio Corp.
475 U.S. 574,
106 S.Ct. 1348,
89 L.Ed. 538 (1986) . . . . . . . . . . . . . . . . . . .  21

Maurer v. Bernardo
118 Cal. App. 290,
5 P.2d 36 (1931) . . . . . . . . . . . . . . . . . . . . .  17

In re Pago Aircrash of January 30, 1974
637 F.2d 704 (9th Cir. 1981) . . . . . . . . . . . . . .  15

Parrixsh v. Atchison, T. & S. F. R. Co.
152 F.Supp. 158 (D. Cal. 1957) . . . . . . . . . . . . .  33

Pena v. Los Angeles
8 Cal. App. 3d 257,
87 Cal. Rptr. 326 (1970) . . . . . . . . . . . . . . . .  28

Robinson & Wilson, Inc. v. Stone
35 Cal. App. 3d 396,
110 Cal. Rptr. 675 (1974) . . . . . . . . . . . . . . . .  10

Salmeron v. United States,
724 F.2d 1357 (9th Cir. 1983) . . . . . . . . . . . . . .  18

Vassere v. Joerger
10 Cal. 2d 689,
76 P.2d 656 (1938) . . . . . . . . . . . . . . . . . . .  17

Wilson v. Lewis
106 Cal. App. 3d 802,
165 Cal. Rptr. 396 (1980) . . . . . . . . . . . . . . . .  10

**Rules**

Fed. Rules of Civil Procedure 26(b) . . . . . . . . . . .  33

Fed. Rules of Civil Procedure 36(b) . . . . . . . . . . .  33

Fed. Rules of Civil Procedure 50(a) . . . . . . . . . . . .  1

Fed. Rules of Evidence 401 . . . . . . . . . . . . . . . .  30

Fed. Rules of Evidence 403 . . . . . . . . . . . . . . 30, 32

Fed. Rules of Evidence 408 . . . . . . . . . . . . . . . .  32

Fed. Rules of Evidence 501 . . . . . . . . . . . . . . . .  30

Fed. Rules of Evidence 613 . . . . . . . . . . . . . . 32, 33

Fed. Rules of Evidence 801(d)(2). . . . . . . . . . . . .  32

Fed. Rules of Evidence 804(b)(1) . . . . . . . . . . . . .  32

W81-1.2.DLD.22.TRIALBRI.3

Fed. Rules of Evidence 804(b)(4)  . . . . . . . . . . . . . .  32

Rule 5-310 of the Professional Rules of Conduct . . . . . . .  27

**Statutes**

California Civil Code §39 . . . . . . . . . . . . . . . . . .  9

Cal. Evid. Code §1012   . . . . . . . . . . . . . . . .  30, 31

Cal. Evid. Code §1013   . . . . . . . . . . . . . . . . . .  30

Cal. Evid. Code §1014   . . . . . . . . . . . . . . . . . .  30

**Other Authorities**

1 Witkin, <u>Summary of California Law,</u>
(9th ed. 1987) Contracts, §887  . . . . . . . . . . . . .  9-10

1 Witkin, <u>Summary of California Law,</u>
(9th ed. 1987) Contracts §189 . . . . . . . . . . . . . . .  15

# I.

## INTRODUCTORY STATEMENT

Notwithstanding the two further versions of his story revealed in the last ten days, once plaintiff Michael Love ("Love") has finished putting on his case in chief on the remaining claims, there will be nothing for the jury to consider. Accordingly, a judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) in favor of defendant Brian Wilson ("Wilson") will be in order.

A final Order of the Court reflecting the Court's Tentative Ruling of May 16, 1994 ("Tentative") regarding Wilson's Motion for Partial Summary Judgment on Love's Eleventh Claim for Conspiracy to Defraud ("Eleventh Claim") would leave Love with only two Claims for Relief. The Eleventh Claim is wholly lacking in merit and is therefore inappropriate to be argued before a jury. For a detailed discussion of the non-viability of Love's Eleventh Claim see Wilson's Motion for Summary Judgment, filed April 28, 1994, Wilson's Reply, filed May 11, 1994, and the Court's Tentative.

The remaining Eighteenth Claim for Breach of Contract/Promissory Estoppel ("Eighteenth Claim") relies on a purported oral contract or promise made by Wilson's former attorneys to the effect that, if Love testified in the Wilson Litigation, Wilson would pay Love an unspecified amount of money if Wilson was successful in his litigation. The evidence to be presented by Love on this claim will give nothing for the jury to decide because the evidence will show that no contract was
///

W81-1.2.DLD.22.TRIALBRI.3

-1-

1  entered into, and that any promise was at best ambiguous and
2  devoid of the essential terms necessary to be enforceable.

3      Love's evidence only demonstrates a promise to agree or an
4  agreement to attempt to agree in the future.  Neither can be
5  enforceable by a jury as a matter of law.

6      According to the Court's Order, Love's final remaining
7  claim, the Nineteenth for Unjust Enrichment ("Nineteenth Claim")
8  is based solely on the Eighteenth Claim.  The Nineteenth Claim
9  therefore adds nothing for the jury to consider, and this claim
10 must fall along with the Eighteenth.

11                              II.

12                      SUMMARY OF ARGUMENT

13 A.    The Eighteenth Claim Is Without Merit

14     Love's Eighteenth Claim has surfaced in several different
15 incarnations.  The Court is reminded that each and every
16 incarnation is in direct contradiction to Love's sworn testimony
17 in the Wilson Litigation that he had been promised no financial
18 interest in Wilson's Litigation.  In the Fourth Amended
19 Complaint, Love's Eighteenth Claim alleges that in 1989-1990
20 Wilson, through his attorneys, promised Love that the Wilson
21 Litigation would be used to recover the copyrights for the songs
22 in the Sea of Tunes Catalog ("The Catalog") for both Wilson and
23 Love, and that Love would be paid  "all monies owed" him as a
24 result of not being fully accredited as a co-author of the 79
25 songs in the Catalog.  Love claims that this was a valid oral
26 contract, binding upon Wilson.

27     The purported promises of the Eighteenth Claim then
28 resurfaced in the Amended Pre-Trial Conference Order as a promise

in 1989-1990 to pay Love money and credit owed him as co-author to the 48 songs for which Love never received credit. See Am. Pre-Trial Conference Order, p. 25. Love's story then had its third incarnation in the Second Amended Pre-Trial Conference Order. Love stated as a "Fact To Be Proved At Trial" that "Wilson breached his oral contract with Mr. Love to share in the proceeds of the Wilson Litigation and pay Mr. Love amounts owed him for royalties on songs for which Mr. Love never received credit." See 2nd Am. Pre-Trial Conference Order, p. 3.

One week prior to trial, Love's Eighteenth Claim resurfaced in yet another incarnation in an entirely different form. See Love's Opposition to Wilson's Motion for Partial Summary Judgment on the Eleventh Claim. The contract was no longer an oral contract, but a written contract made in 1986 for one-third of the proceeds of the Wilson Litigation. In 1989-1990, Wilson's attorneys renewed the 1986 contract, promising Brian would pay Love "whatever Mike was owed," or one-third of the recovery from the Wilson Litigation and a prospective share of the copyrights and income. Id. at 4.

And now, on the eve of trial, Love's Eighteenth Claim is still being revised. Love's Trial Brief filed on May 16, 1994, one day prior to the scheduled trial date, contains a never before seen or heard of allegation. Love's latest contention is that:

> "In late 1986, Wilson, Mason, Landy and Branca met with
> Kory and Mr. Love to enlist Mr. Love's aid in the
> investigation into the 1969 Sale. In that meeting they
> went over a list of the songs for which Mr. Love did

W81-1.2.DLD.22.TRIALBRI.3

1    not receive proper credit.  Wilson, Mason and Landy

2    left the room, deliberated, re-entered the room and

3    told Mr. Love that Wilson would pay him from the action

4    they contemplated filing."

5  Love's Trial Brief, p. 9, lines 14-18.

6      The implausibility of this story cannot be denied.  The

7  meeting as alleged by Love, was in the presence of both Love and

8  Kory.  There is no excuse for not having made this allegation

9  earlier.  It is highly unlikely that both Love and Kory forgot

10  about this 1986 meeting until now.  In addition, Love claims that

11  they went over a list of songs co-authored but not credited to

12  Love.  However, Kory testified under oath that in 1986 he knew

13  there were concerns about songs other than "California Girls,"

14  but that he "didn't have the facts."  Kory Depo., vol. 1, p. 150,

15  lines 16-24.  If he had gone over a list of the songs in 1986

16  then he would have known of the "facts."

17      And moreover, in Kory's two declarations filed in this

18  matter, he states that in 1986 he learned that Wilson's attorneys

19  were investigating the 1969 Sale.  However, he omits any

20  reference to an agreement to pay and the first mention of an

21  agreement to pay Love is in connection with Tierney's contact in

22  the winter of 1989-1990 requesting Love's assistance in the

23  litigation.  See Declaration of Robert Kory dated December 11,

24  1993 and Exhibit "1" attached hereto, Kory Declaration dated

25  November 6, 1992.

26      This alleged 1986 meeting was also brought to the Court's

27  attention on May 16, 1994 (the same day Love filed his Trial

28  Brief) at the hearing on Wilson's Motion for Partial Summary

1  Judgment.  However, in that version, there is an additional
2  person in attendance at the meeting, an "impartial witness"
3  according to Love's counsel.  All of the people who Love has
4  identified as attending that meeting (Landy, Wilson, Mason,
5  Branca, Love and Kory) are anything but impartial.

6  Love's many claims are without merit.  Assuming, arguendo,
7  that a contract was entered into, which Wilson vehemently denies,
8  that contract was voidable because Wilson did not have the
9  capacity to enter into an enforceable contract, and Wilson's
10 Conservator subsequently rescinded the contract in the Answer
11 pleading the affirmative defense of incapacity.  See Answer to
12 Fourth Amended Complaint, p. 38, ¶ 194.

13 Moreover, assuming that Love will select one of the various
14 stories he has advanced, the evidence will show that there was no
15 meeting of the minds necessary to create an enforceable contract.
16 The promises that Love alleges were made to him do not give rise
17 to an enforceable contract for they are devoid of all of the
18 essential terms necessary for a contract to be enforceable (i.e.,
19 the amount of money to be paid and which songs payment was to be
20 made for).  The trier of fact would be unable to determine what
21 would constitute a breach of the contract and what would be the
22 measure of damages for that breach.  If there was any agreement
23 made between Love and Wilson's attorneys, it was merely an
24 agreement to agree in the future, which is not enforceable as a
25 matter of law.

26 Looking at the evidence which will be given at trial as a
27 whole will reveal that Love's explanations regarding the
28 ///

W81-1.2.DLD.22.TRIALBRI.3

-5-

1   Eighteenth Claim are implausible and do not raise a genuine issue
2   of material fact for the jury to consider.

3       Furthermore, even if Wilson's attorneys made the promises
4   alleged, which Wilson's evidence will refute, Wilson is not bound
5   by those promises.  The promises as alleged by Love constitute
6   conduct which is prohibited by the Rule of Professional Conduct
7   for attorneys and therefore were outside the scope of the
8   attorneys' authority.

9       Love also claims that even if there was no enforceable
10  contract, Wilson must abide by the alleged promises based on a
11  theory of promissory estoppel.  However, Love cannot establish
12  the elements necessary for promissory estoppel.  Love cannot show
13  that he reasonably relied on the promises.  In addition, given
14  the effect of the Court's Order of April 18, 1994.  Love cannot
15  show that he sustained any damages based upon the alleged
16  promises.

17  B.   The Nineteenth Claim For Unjust Enrichment Must Fall At The
18       Same Time As The Eighteenth Claim

19      The Court's Order held that Love's Nineteenth Claim for
20  Unjust Enrichment is merely based upon the remaining Eighteenth
21  Claim.  The Nineteenth claim itself adds nothing independently
22  and therefore should fall subject to a judgment as a matter of
23  law at the same time that the Eighteenth does.

24  ///
25  ///
26  ///
27  ///
28  ///

W81-1.2.DLD.22.TRIALBRI.3

-6-

III.

## THE EIGHTEENTH CLAIM IS SUBJECT TO

## A JUDGMENT AS A MATTER OF LAW

A.   Summary Of Love's Eighteenth Claim For Breach Of

Contract/Promissory Estoppel

Love's Eighteenth Claim alleges that in 1989-90, Wilson through his attorneys, promised Love that the Wilson Litigation would be used to recover copyrights for the songs in The Catalog for both Wilson's and Love's benefit and that Love would be paid unspecified "monies owed" from the proceeds of Wilson's lawsuit. See 4th Am. Compl. at pp. 63-64.

Love claims that these promises constituted a legally binding oral contract.  Love further claims that Wilson breached the contract because after Wilson received a settlement in the Wilson Litigation, he refused to pay Love the "monies owed" him.

In the alternative, Love claims that even if an enforceable oral contract did not exist as between Love and Wilson, Wilson, through his attorneys, promised Love that he would pay Love the "monies owed."  In reliance upon this promise Love allegedly did not join in the Wilson Litigation to assert his claims against Wilson and willingly testified on Wilson's behalf in that lawsuit.  Love further claims that as a result of his reliance, Wilson is estopped from claiming that there was no contract entered into and that he does not legally owe Love the money.

The allegations underlying Love's Eighteenth Claim have undergone several revisions.  Initially the promise was to be paid money owed on the 79 songs for which Love was never credited.  Then the promise was to share in the proceeds of the

Wilson Litigation and to be paid amounts owed him for royalties on songs for which Love never received credit.  See 2nd Am. Pre-Trial Conference Order, p. 3.  And then there was last week's version of the purported promise, that in 1986 Wilson's business manager Sean Corrigan ("Corrigan") made a written offer for one-third of the Wilson Litigation and that Kory, Love's attorney accepted the offer on Love's behalf.  Love further refined the one-third promise into a purported promise that Love would be paid whatever he was owed or one-third of the recovery from the Wilson Litigation and a prospective share of the copyrights and income.[1]  See Love's Opposition to Wilson's Motion for Partial Summary Judgment on the Eleventh Claim.

And now, on the eve of trial there is yet another version of the purported promise.  Love now contends that in 1986, Brian Wilson along with his advisors Landy, Mason and Branca agreed to pay Love for the songs he never received credit from the proceeds of the lawsuit he was planning to file against Irving Music.  See Love's Trial Brief filed May 16, 1994, p. 9, lines 14-18.

Love's various stories are at odds with each other and make his claim so implausible that there is nothing for a jury to decide.

///

///

///

---

[1]  Love's claim that a written contract for one-third of the Wilson Litigation was entered into is completely devoid of merit.  In addition, Love's failure to include this allegation in the three Pre-Trial Conference Orders necessitates that this Court preclude Love from raising this claim or legal theory at trial.  See discussion, infra, at Section IIA.

W81-1.2.DLD.22.TRIALBRI.3

B.   <u>Assuming, Arguendo, A Contract As Alleged By Love, Any Such</u>
     <u>Contract Is Voidable And Has Been Rescinded By Wilson's</u>
     <u>Conservator</u>

        "A conveyance or other contract of a person of unsound mind,
but not entirely without understanding, made before his
incapacity has been judicially determined, is subject to
rescission."  Cal. Civil Code §39.  On March 9, 1992, Jerome S.
Billet was appointed conservator of the Person and Estate of
Brian Wilson.

        Love admits Wilson was not of sound mind at the time the
alleged contract was made.  Love Depo. in the Wilson Litigation,
vol. 1, 105:25 - 106:23, 204:21, attached hereto as Exhibit "2";
Love Depo., vol. 10, 1672:7-13, attached hereto as Exhibit "3."
Assuming <u>arguendo</u>, a contract was made by Wilson through his
attorneys with Love to pay Love the monies that Love was owed,
which Wilson emphatically denies, that contract was voidable.
With the establishment of a conservatorship for Wilson in March,
1992, and the Conservator's refusal to recognize Love's claims,
that contract was effectively rescinded.  Wilson did not have the
capacity to enter into a contract and the fact that Wilson had
attorneys representing him does not change the fact that any
alleged contract is voidable.  Wilson could not confer upon his
attorneys the authority to what he himself could not do.  Wilson
lacked the capacity to contact.  Accordingly, he could not give
an attorney authority to enter into a contract on his behalf.

        Notice of rescission need not be in any particular form.
Rescission "must simply indicate the intention of the party
rescinding to treat the contract as ended."  1 Witkin, <u>Summary of</u>

1  <u>California Law</u> (9th ed. 1987) Contracts, §887 at p. 796.  In
2  Wilson's Answer to the Fourth Amended Complaint, Wilson's
3  Conservator made it clear that if the alleged contract for
4  payment of monies owed was made with Love, Wilson was incompetent
5  at the time and lacked the capacity to enter into a valid
6  contract, and further that any such agreement was not recognized
7  by the Conservator.  <u>See</u> Answer to Fourth Amended Complaint,
8  filed October 7, 1993 at ¶194.  <u>See also</u>, <u>Wilson v. Lewis</u>, 106
9  Cal. App. 3d 802, 809, 165 Cal. Rptr. 396 (1980) ("If the facts
10 exist that justify rescission by one party, and he declares a
11 rescission in <u>some effectual manner</u>, he terminates the
12 contract").

13 C.    <u>There Was No Agreement Between Wilson And Love As To The</u>
14       <u>Essential Terms Of The Agreement</u>

15     In order to establish an enforceable contract, Love must be
16 able to establish that there was a "meeting of the minds" between
17 himself and Wilson on "the essential features of the agreement."
18 <u>Robinson & Wilson, Inc. v. Stone</u>, 35 Cal. App. 3d 396, 407, 110
19 Cal. Rptr. 675 (1974) (Written contract to provide labor and
20 materials to construct "standard" medical suites, unenforceable
21 for indefiniteness where no plans or specifications); quoting
22 <u>Ellis v. Klaff</u>, 96 Cal. App. 2d 471, 478, 216 P.2d 15 (1950)
23 (Agreement to build "building or buildings" on leased land too
24 indefinite to be enforced).

25     "To be enforceable, a promise must be definite enough that a
26 court can determine the scope of the duty and the limit of
27 performance must be sufficiently defined to provide a rational
28 basis for the assessment of damages."  <u>Ladas v. California State</u>

W81-1.2.DLD.22.TRIALBRI.3

-10-

1  <u>Auto. Assoc.</u>, 19 Cal. App. 4th 761, 770, 23 Cal. Rptr. 2d 810

2  (1993) (Contract to pay salesmen commissions "in keeping with

3  industry standards" so as to maintain "parity," is too vague to

4  be an enforceable contractual obligation).

5      "Where a contract is so uncertain and indefinite that the

6  intention of the parties in material particulars cannot be

7  ascertained, the contract is void and unenforceable."  <u>Id.</u>;

8  quoting <u>California Lettuce Growers v. Union Sugar Co.</u>, 45 Cal. 2d

9  474, 481, 289 P.2d 785 (1955).

10      1.   <u>The Alleged Contract Did Not Specify The Amount Of</u>

11           <u>Money To Be Paid, Nor Which Songs Wilson Was To</u>

12           <u>Compensate Love For</u>

13      Love's own evidence is undisputed that no agreement was

14  reached as to the exact or any other <u>amount</u> of "monies" to be

15  paid Love for any additional songs he many have "co-authored," or

16  the "copyright interests" he was to receive.  Nor was there any

17  agreement as to what additional songs the agreement would deal

18  with.  The trier of fact would have to supply <u>all</u> of the

19  essential terms of this alleged contract in order to enforce it

20  and assess damages.

21      Love testified that neither John E. Mason ("Mason"), James

22  P. Tierney ("Tierney") nor James J. Little ("Little") ever

23  promised him a <u>specific</u> dollar amount, nor <u>specified which songs</u>

24  payment would be made for.  Love Depo., vol. 9, 95:19-22,

25  attached hereto as Exhibit "4"; Love Depo., vol. 10, Exhibit "3,"

26  1657:10-16; 1682:14-21; 1688:3-6; 1689:19 - 1690:14; Robert Kory

27  Depo., vol. 1, 175:20 - 176:11, attached hereto as Exhibit "5";

28  Kory Depo., vol. 2, 249:7 - 250:14, attached hereto as

1    Exhibit "6"; see also Mason Depo., vol. 2, 219:6 - 221:24,
2    attached hereto as Exhibit "7."

3        Robert Kory ("Kory"), Love's personal attorney, also
4    confirmed during his deposition that no agreement was ever
5    reached as to what payment was to be made to Love.  And while
6    Love alleges that he was promised that the copyrights would be
7    recovered for his benefit, Kory has testified that, in fact, the
8    promise was simply to give Love "fair value," which was to be
9    determined after future lengthy, complex negotiations which never
10   were concluded.  Kory Depo., vol. 2, Exhibit "6," 249:3-22.

11       Love's bare allegation that he was to be paid "all monies
12   owed" him must be read in conjunction with all the evidence and
13   testimony which confirms that no agreement was ever reached as to
14   what, if anything, Love was "owed."  See 4th Am. Compl. at ¶178;
15   Love Depo., vol. 9, Exhibit "4," 95:19-22; Love Depo., vol. 10,
16   Exhibit "3," 1657:10-16; 1682:14-21; 1688:3-6; 1689:19 - 1690:14;
17   Love Depo., vol. 11, 1925:19 - 1926:5, attached hereto as
18   Exhibit "8"; Kory Depo., vol. 1, Exhibit "5," 175:20 - 176:11;
19   Kory Depo., vol. 2, Exhibit "6," 249:7 - 250:14; see also Mason
20   Depo., vol. 2, Exhibit "7," 219:6 -221:24.

21       Both Kory's and Love's testimony directly contradict the new
22   one-third promise.  If there is a promise for one-third of the
23   litigation why was it never mentioned until one week before
24   trial?

25       Love has also testified that throughout the decades Wilson
26   has not recognized Love's claim to co-authorship of many of the
27   additional songs Love now claims co-authorship of.  Love Depo. in
28   the Wilson Litigation, vol. 2, 312:5 - 314:13, attached hereto as

W81-1.2.DLD.22.TRIALBRI.3

-12-

1   Exhibit "9"; Love Depo., vol. 4, 606:20 - 607:5, attached hereto

2   as Exhibit "10"; see also, Stephen Love Depo. 33:1 - 34:11,

3   attached hereto as Exhibit "11."

4       The undisputed evidence, even when viewed in Love's favor,

5   falls far short of a "promise . . . definite enough . . . to

6   provide a rational basis for the assessment of damages."  Ladas,

7   supra, 19 Cal. App. 4th at 770.

8       2.   There Was No "Meeting of The Minds" As To The Terms Or

9            Purpose Of The Alleged Contract

10      Both of Wilson's attorneys, Tierney and Mason, confirm that

11  there was simply an undertaking to pursue negotiations on Love's

12  claim to "California Girls" together with Wilson's claim to a

13  producer's royalty for Wilson's production efforts on all the

14  major Beach Boys' hit records.  Those negotiations never resulted

15  in an agreement.  Tierney Depo., vol. 2, 274:4 - 275:1, attached

16  hereto as Exhibit "12"; Mason Depo., vol. 2, Exhibit "7," 219:10

17  220:8.

18      In fact, Tierney's and Mason's testimony is that no

19  agreement was ever reached because Love and his representatives

20  failed to negotiate in good faith.  Once negotiations commenced

21  on the issue of "California Girls," Love then claimed to have

22  co-written an additional two, then five, then 25 and ultimately

23  scores of songs.  Mason Depo., vol.4, 655:4 - 657:4, attached

24  hereto as Exhibit "13."

25  D.  An Agreement To Agree Is Not Enforceable Under California

26      Law

27      The evidence is overwhelming and undisputed that Wilson,

28  Love and the other Beach Boys tried to reach an agreement on a

W81-1.2.DLD.22.TRIALBRI.3

1  settlement and resolution regarding a multitude of outstanding
2  respective claims of all the Beach Boys but failed to do so. It
3  is well-settled that an agreement to agree in the future is
4  simply unenforceable under California law. Banco do Brazil S.A.
5  v. Latian, Inc., 234 Cal. App. 3d 973, 1015 n.55, 285 Cal. Rptr.
6  870 (1991); Kruse v. Bank of America, 202 Cal. App. 3d 38, 59-60,
7  248 Cal. Rptr. 217 (1988).

8       Kory has testified that Wilson's attorney only agreed that
9  if Love testified truthfully at his deposition, Wilson's
10 representatives would agree to embark on a complicated "process"
11 to try and resolve Love's claims to "California Girls" and
12 possibly other songs. This "process" was never completed. Kory,
13 further testified that the agreement to be reached would not
14 "become operative" or "effective" until the parties reached a
15 "resolution of all the old issues between Brian and Mike,"
16 including Wilson's own claims to a producer's fee. See Kory
17 Depo. Excerpt No. 1 to Ex. 60 to Wilson Reply filed February 28,
18 1994 to Love's Opposition to Wilson's Motion for Reconsideration
19 ("Wilson Reply").

20 E.   The Corrigan/Kory Correspondence Cannot Support A Contract

21      One week prior to trial, Love raised a phantom promise of
22 one-third of the Wilson Litigation recovery in a bold attempt to
23 bolster the Eighteenth Claim, which previously never contained a
24 written promise or a promise for a specific amount or percentage.
25 See Love's Opposition to Wilson's Motion for Partial Summary
26 Judgment, filed May 6, 1994. Moreover, the testimony in this
27 case has always been that the purported promises were oral, not
28 written. See Kory Depo., Vol. 1, Exhibit "5," 177:19-22. This

W81-1.2.DLD.22.TRIALBRI.3

-14-

1  alleged contract/promise is based upon a series of correspondence
2  between Corrigan and Kory in late 1986 - mid 1987.

3  Corrigan's letter of December 22, 1986 conditionally offers
4  Love one-third of the Wilson Litigation proceeds, however the
5  offer also requires Love to pay one-third of the litigation
6  costs. See Corrigan letter dated December 22, 1986 attached
7  hereto as Exhibit "14."

8  Kory responds five months later stating that "Mike is very
9  interested in the status of the [Wilson Litigation] and he would
10  like to consider participation in this matter in the context of
11  the overall joint venture between Mike and Brian." See Kory
12  letter dated May 11, 1987 attached hereto as Exhibit "15."

13  1.  Kory's Letter Was Not An Acceptance

14  Kory's letter is not an acceptance of the offer. The
15  statement, "Mike is very interested" is not an acceptance. At
16  best, the letter is a counter offer, conditioning the arrangement
17  on the contemplated joint venture. See 1 Witkin, Summary of
18  California Law, (9th ed. 1987) Contracts §189, p. 190 ("A
19  qualified acceptance or a counteroffer constitutes rejection of
20  the original offer, and the original offer cannot thereafter be
21  accepted by the offeree"). See also In re Pago Aircrash of
22  January 30, 1974, 637 F.2d 704, 706 (9th Cir. 1981) ("If the
23  acceptance contains conditions not embraced in the offer or adds
24  new terms, there is no meeting of the minds and no acceptance."

25  This exchange does not indicate a promise that Love would
26  receive one-third of the Wilson Litigation. As a matter of fact,
27  the only mention of one-third is that Love should pay one-third
28  of the costs. There is only the inference that the "offer" was

W81-1.2.DLD.22.TRIALBRI.3

-15-

1  also an offer of one-third of the recovery. Nevertheless, if
2  Corrigan's letter was indeed an offer of one-third of the
3  recovery, it was in exchange for Love's payment of one-third of
4  attorneys' fees which he neither paid nor offered to pay.

5  As further evidence that Love and/or Kory never accepted the
6  "one-third" promise the Court need only look at the minutes of
7  the January 1990 BRI meeting (attached as Ex. "5" to the
8  Declaration of Douglas Day in support of Wilson's Reply on the
9  Motion for Summary Judgment, filed May 10, 1994 ("Day
10  Declaration"). At the BRI meeting there was an extensive
11  discussion as to Love's claims to past royalties, not once was
12  the alleged "one-third" promise made in 1986 and allegedly
13  accepted in 1987 by Kory's letter discussed. In the Complaint,
14  Love alleges that Wilson promised to pay him "all monies owed for
15  the 79 Songs . . . . " 4th Am. Compl., p. 64, ¶173, line 10.
16  Not once does Love allege that there was a written promise to pay
17  one-third of the Wilson Litigation proceeds.

18  What was discussed was how the parties could resolve all of
19  the outstanding issues between them, including those between Love
20  and Wilson. In other words, no promise had been made prior to
21  that time and no promise was made then.

22  Assuming arguendo, such a contract was made, which Wilson
23  emphatically denies, the contract was conditioned on Love's
24  payment of one-third of the attorneys' fees. Love never paid nor
25  offered Wilson one-third of the attorneys' fees. Whether or not
26  there was a contract, Wilson was excused from performance by

27

28

W81-1.2.DLD.22.TRIALBRI.3

-16-

1    Love's failure to pay attorneys' fees.[2]  Moreover, under

2    California Civil Code section 3358, a plaintiff cannot recover a

3    greater amount in damages than he could have gained by full

4    performance of the contract by both sides.  Accordingly, if

5    Wilson did enter into a valid contract for one-third of the

6    recovery in exchange for payment of one-third of attorney's fees,

7    the most Love can hope to recover is one-third of Wilson's net

8    recovery minus one-third of attorney's fees.

9       2.   The Corrigan Letter Cannot Revive A Time Barred Debt

10      Love has argued that the Corrigan letter of December 22,

11    1986 acts to revive Wilson's time-barred obligations on the songs

12    co-authored by Love for which he never received credit.  The law

13    is clear that a time-barred debt can only be revived by an

14    unqualified, unconditioned writing signed by the debtor.  See

15    Vassere v. Joerger, 10 Cal. 2d 689, 695, 76 P.2d 656 (1938);

16    Maurer v. Bernardo, 118 Cal. App. 290, 5 P.2d 36 (1931).

17    F.   There Was No Consideration For Wilson's Alleged Promise To

18       Pay

19      It is Love's contention that in exchange for Wilson's

20    promise of payment, he refrained from filing suit against Wilson;

21    and that is valid consideration.  See Trial Brief, p. 14,

22

---

23        [2]  Love may argue that Wilson's attorney, John Mason

24    said that Love would benefit from the litigation and "we're
not allocating any of those fees to Mike."  BRI minutes, p.

25    60, Ex. "5" to Day Declaration.  Such a statement does not
lend any support to Love's position.  To the contrary it is

26    further evidence that the 1986 "one-third" offer was never
accepted, because that offer included the condition of one-

27    third payment of attorneys' fees.  Kory's response that they
were willing to discuss that in the context of an "overall

28    settlement," is a further evidence that no agreement had
been reached.  BRI Minutes, p. 60, Ex. "5" to Day
Declaration.

1   lines 16-22. While forbearance from asserting a legal claim is

2   valid consideration, that statement of law is not applicable to

3   the instant case. Forbearance from asserting a claim that is

4   known to be invalid is not good consideration. <u>See</u> <u>Salmeron v.</u>

5   <u>United States</u>, 724 F.2d 1357, 1363 (9th Cir. 1983); <u>Doria v.</u>

6   <u>AFL-CIO</u>, 196 Cal. App. 2d 22, 16 Cal. Rptr. 429, 438 (1961)

7   ("Agreement to forbear to sue on sham and unfounded causes cannot

8   constitute valid legal consideration").

9       Love feebly attempts to counter this black letter law by

10   citing the proposition that if the forbearing party believes the

11   claim to be valid then the forbearance is valid consideration.

12   <u>See</u> Trial Brief, p. 15, lines 1-4. However, neither Love nor his

13   attorney Kory believed that Love had an enforceable claim against

14   Wilson. <u>See</u> Kory Depo., vol.1, Exhibit "5," 144:23-25,

15   175:23-25.

16   G.   <u>Taking The Record As Whole, Love's Eighteenth Claim Fails As</u>

17       <u>A Matter of Law</u>

18       Contrary to Love's present claim that he was promised money

19   from the Wilson Litigation, Love repeatedly testified at his 1991

20   deposition in the Wilson Litigation that there was no agreement

21   between Wilson and himself that he would benefit from the Wilson

22   Litigation. Love has tried to reconcile his 1991 sworn denials

23   of the existence of any agreement or any promise with his present

24   contrary allegations of the existence of a 1989-90 oral contract,

25   by offering at least three alternative versions of the "truth."[3]

26

27       [3]   First, Love argued that he testified truthfully in
1991 that he was not to receive a "financial benefit" from

28   the Wilson Litigation because he was "promised"
"copyrights." Love's Supp. Memo. in Opposition to MSK's
Motion for Appointment of a Special Master, filed Feb. 28,

W81-1.2.DLD.22.TRIALBRI.3

-18-

1   It would now appear that at the final hour, Love is no
2   longer comfortable with his third version of the truth, however
3   in his rush to come up with a more convincing story Love has
4   distorted all of the facts.  Love's fourth version of the truth
5   set forth in his Trial Brief starts off with the statement that
6   he was deposed in the Wilson Litigation on March 31, 1991.  That
7   is a misstatement of fact.  Love was deposed on March 29, 1991
8   and on May 15, 1991.  Love further alleges that Little prepared
9   Love for the deposition "and told him that he had to testify that
10  he had no financial interest in the Wilson Litigation because the
11  law required that such an interest be set forth in writing."
12  Trial Brief at p. 5, lines 16-19.

13  Love's next allegation is that on the second day of his
14  deposition, "Tierney confirmed that Wilson will pay one third of
15  the case or 'whatever Mike is owed' and reclaim the copyrights
16  for both of them."  Id. at lines 19-20.  Never before has Love
17  contested any of Tierney's alleged promises to his second day of
18  Love's deposition.  What happened to Love's story about the
19  ///

20

21  1993 at 2, lines 20-25.  Second, since Love does allege he
    was promised "monies," he then argued that when he was asked
22  at his March, 1991 deposition whether he would benefit from
    Wilson's case, Wilson's attorney, Little, took a break and
23  told him and his attorney, Kory, in the hallway, to deny
    that he had any interest in the case.  See Am. Pre-Trial
24  Conference Order, filed March 14, 1994, p. 28.  And finally,
    last December, 1993 Love claimed that during this phantom
25  break during the questioning -- which the transcript shows
    was uninterrupted -- Kory telephoned Wilson's other
26  attorney, Tierney, who counseled that the "promise" to Love
    was "independent" of the Wilson Litigation.  See Declaration
27  of Robert Kory, filed Dec. 11, 1993 at para. 5, Exhibit "1".
    But see Kory Depo. Excerpt No. 2 to Ex. 60 to Wilson's
28  Reply.  (No mention of the supposed Tierney telephone
    conversation during the break.)

W81-1.2.DLD.22.TRIALBRI.3

-19-

1  phantom break during the first day of the deposition testimony
2  and the phone call to Tierney?

3      The testimony of Kory, establishing only an unenforceable
4  agreement to agree, and Kory's conflicting testimony as to what
5  transpired at the alleged break at Love's deposition, must be
6  considered in light of Love's rapidly changing stories, and the
7  deposition transcript itself.  When so considered, Love's fourth
8  version of the "truth" does not raise a triable issue of fact
9  given the record as a whole.

10     Using Love's latest story, Love alleges that he was promised
11  one-third of the recovery in the Wilson Litigation or whatever he
12  was owed.  However, in 1991 under oath, Love denied such a
13  contract existed.  Love stated five times that he had no
14  financial interest in Wilson's lawsuit.  Love testified under
15  oath that:

16     (1)  he had no financial interest in the outcome of Brian's
17  lawsuit;

18     (2)  no one ever suggested that he might benefit financially
19  as a result of Brian winning his lawsuit;

20     (3)  no one representing Brian ever indicated that Mike
21  might benefit financially from Brian's lawsuit;

22     (4)  he was not aware of any discussions concerning whether
23  or not Brian's success in his litigation might benefit Mike
24  financially; and

25     (5)  he did not have any reason to believe that if Brian was
26  successful in his lawsuit Mike would obtain any financial
27  benefit.

28  Love Depo., vol. 1, Exhibit "2," 171:21-172:22.

W81-1.2.DLD.22.TRIALBRI.3

-20-

1  A witness cannot create a triable issue by contradicting his

2  prior, sworn admissions. <u>Jurado v. Eleven Fifty Corp.</u>, 813 F.2d

3  1406, 1410 (9th Cir. 1987); <u>Foster v. Arcata Assoc., Inc.</u>, 772

4  F.2d 1453, 1462 (9th Cir. 1985), <u>cert.</u> <u>denied</u>, 475 U.S. 1048.

5  Any slight chance that a jury could find for Love if the

6  evidence is limited only to Love's testimony, is dispelled when

7  the record is taken as whole.

8  Even when a witness submits sworn testimony to support his

9  allegations, he may not be able to create a triable issue if the

10  record, taken as a whole, makes his claim implausible.

11  <u>Matsushita Elec. Industr. Co., Ltd. v. Zenith Radio Corp.</u>, 475

12  U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed. 538 (1986). This is such

13  a case.

14  The deposition testimony of Mason, Wilson's transactional

15  attorney in 1989-90, and his litigation counsel at that time,

16  Tierney, indicates that although Love and other members of the

17  Beach Boys attempted to negotiate a global resolution of all of

18  their respective issues in 1989-90, no agreement was <u>ever</u>

19  reached. <u>See</u> Tierney Depo., vol. 2, Exhibit "12," 274:4 - 275:1;

20  Mason Depo., vol. 2, Exhibit "7," 219:10 220:8; Love Depo.,

21  vol. 11, Exhibit "8," 1925:19 - 1926:5.

22  As to Love's three or more explanations for his 1991 sworn

23  denials that any agreement was reached, his last two explanations

24  hinge on Little's alleged request for a break in Love's 1991

25  deposition testimony when the issue of Love's financial benefit

26  from the Wilson Litigation "first arose." <u>See</u> Kory Declaration

27  filed December 11, 1993 at para. 5, Exhibit "1." <u>The deposition</u>

28  <u>transcript renders these last two explanations impossible because</u>

1  the transcript is clear that the questioning was unbroken, with a

2  break *preceding* any question regarding Love's potential benefit

3  from Wilson's case.  Love Depo. in the Wilson Litigation, vol. 1,

4  Exhibit "2," 171-72.

5      In addition, Kory's subsequent declaration that during this

6  "break" he telephoned Tierney, who counseled Love how to answer

7  questions regarding the promise made to Love, is implausible

8  given that, when deposed in 1993, Kory testified only that Little

9  took Kory and Love out in the hallway and told Love what to say,

10 and Kory never mentioned any telephone call to Tierney.  See Kory

11 Depo., Excerpt No. 2 to Ex. 60 to Wilson Reply.

12     Accordingly, when the record is taken as a whole, no

13 reasonable jury could believe Love's newest and fatally-flawed

14 explanation.

15 H.   Love Cannot Establish The Elements Necessary For A Claim Of

16      Promissory Estoppel

17     The Eighteenth Claim requests, in the alternative, recovery

18 based upon promissory estoppel.  The required elements of a claim

19 for promissory estoppel under California law are:  (1) a promise

20 clear and unambiguous in its terms; (2) reliance by the party to

21 whom the promise is made; (3) his reliance must be both

22 reasonable and foreseeable; and (4) the party asserting the

23 estoppel must be injured by his reliance."  Laks v. Coast Fed.

24 S. & L. Assoc., 60 Cal. App. 3d 885, 890, 131 Cal. Rptr. 836

25 (1976).

26     1.   The Alleged Promise Is Ambiguous On Its Terms

27     Love alleges that Wilson promised to pay Love all monies

28 owed him.  This term is ambiguous on its face.  The promise is

W81-1.2.DLD.22.TRIALBRI.3

ambiguous given that Love claims that he co-authored 48
additional songs that he was never credited for, and that he was
entitled to publishing income for all 79 of the songs he claimed
he co-authored, combined with Wilson's repeated denials of these
allegations.

The alleged promise is ambiguous as to the exact amount of
money that was to be paid, and ambiguous as to what songs the
money was to be paid for.

2.   Love's Reliance, If Any, Was Unreasonable

Love's claimed reliance on the alleged promises was not
reasonable.  While Wilson may have entered into good faith
negotiations to resolve the dispute as to Love's claim of
co-authorship on one song, "California Girls," Wilson never
acknowledged that Love was entitled to the copyright of that
song, nor that Love was owed money on the other 47 songs Love has
made claim to.

In addition, Love has admitted that at the time of these
alleged promises, Wilson was not of sound-mind, and that he could
not rely on any of the promises that were made.  Love Depo. in
the Wilson Litigation, vol. 1, Exhibit "2," 105:25 - 106:23,
204:21-22; Love Depo., vol. 10, Exhibit "3," 1672:7-13.  Love
even alleges that Brian's last promise was in August 1992 when
Brian told Love he had instructed his attorneys to pay Love.  See
Trial Brief, p. 19, lines 10-21.  However, in March 1992 a
conservatorship was established for Wilson and after that point
in time it became public that Brian was incompetent and that he
had no legal control over his finances or business affairs.  It
was not just that Love knew that Wilson was not of sound mind and

1    could not be relied upon, Love testified that he <u>did not believe</u>

2    the promises that were made to him.  Love Depo. in the Wilson

3    Litigation, vol. 2, Exhibit "9," 313:2-25.

4       If Love relied upon the alleged representations of a known

5    incompetent, his reliance was unreasonable.  Accordingly, Love's

6    claim of promissory estoppel is without merit.

7       3.    <u>Love Did Not Rely On The Alleged Promise To His</u>

8          <u>Detriment</u>

9       Assuming, <u>arguendo</u>, a promise was made to Love, and Love, in

10    justifiable reliance on that promise, did not intervene in the

11    Wilson Litigation, Love still cannot claim or prove that he was

12    injured by his reliance.  Love brought a lawsuit against the same

13    parties whom were named as defendants in the Wilson Litigation,

14    and Love settled with them for a substantial amount of money.

15    Love has therefore suffered no damages.  To allow Love to recover

16    from Wilson would give Love a double recovery and would be

17    unfair.

18       As to Love's claims against Wilson, Love could have brought

19    these claims if he had joined in the Wilson Litigation, but the

20    claims would have been barred by the statute of limitations, just

21    as they are in this case.  The additional two years wait to sue

22    Wilson did <u>not</u> cause any statute of limitations to run; those all

23    tolled over twenty years ago as the Court held in its Order.

24       Promissory estoppel is an equitable remedy and if Love

25    cannot prove any injury, the Court cannot use equity to enforce

26    an unenforceable promise.

27    ///

28    ///

W81-1.2.DLD.22.TRIALBRI.3

-24-

1          4.    An Agreement To Agree Cannot Be Enforced On A
2                Promissory Estoppel Theory

3          An agreement to agree cannot be enforced on a
4    promissory estoppel theory.  Laks, supra, 60 Cal. App. 3d at
5    892-93 ("The law does not provide a remedy for breach of an
6    agreement to agree in the future, and the court may not speculate
7    upon what the parties will agree"), quoting Burgess v. Rodom, 121
8    Cal. App. 2d 71,73, 262 P.2d 335 (1953).  As a result, Love's
9    promissory estoppel theory also fails because the undisputed
10   evidence establishes no enforceable promise was made to Love.

11         5.    Even If Wilson's Attorneys Made Promises To Love, Those
12               Promises Do Not Create A Valid Oral Contract Binding
13               Wilson

14         Assuming arguendo, that Wilson's attorneys made promises to
15   Love regarding Wilson's recovery in the Wilson Litigation, such
16   promises were not authorized by Wilson and were beyond the scope
17   of their employment as Wilson's legal counsel.  Without any
18   factual support whatsoever, Love alleges that Wilson's attorneys
19   told him that the Wilson Litigation was being pursued to recover
20   both Wilson's and Love's copyrights to the songs and that Wilson
21   would pay Love, from the proceeds of that litigation, the monies
22   owed him.  Love further alleges that he relied on this
23   representation.

24         6.    An Attorney Does Not Have Plenary Power To Bind His
25               Client To A Contract

26         The attorneys who allegedly made such promises, which Wilson
27   denies were ever made, were never given the authority to make
28   such a promise.  An attorney cannot bind the client to a contract

W81-1.2.DLD.22.TRIALBRI.3

without the client's authorization.  See Blanton v. Womancare, 38 Cal. 3d 396, 407-408, 212 Cal. Rptr. 151 (1985) ("Absent express authority, it is established that an attorney does not have implied plenary authority to enter into contracts on behalf of his client").

Wilson never gave such authorization.  Love has repeatedly claimed that Mason's statement at the January 1990 BRI Meeting was made in Wilson's presence and that Wilson tacitly consented to the promises Mason made.  See Trial Brief, p. 22, lines 2-5. However, when Mason made the infamous "stands to gain millions" statement, Brian had already left the meeting.  See BRI Minutes, p. 44.  Furthermore, Love cannot in good faith argue that he believed that Wilson agreed to pay him money for the copyrights on 79 songs and songwriter royalties on the 48 songs in dispute.

Given the fact that Wilson has never acknowledged that Love was entitled to the copyright of any of the songs and the fact that Wilson never entertained discussions with Love as to improper crediting on any song other than "California Girls," Love could not have reasonably relied upon the alleged promises by Wilson's attorneys.

The discussions regarding "California Girls," and the proposed agreement to settle all disputes, specifically focused as to Love only on the issue of Love's claim for additional songwriter's royalties; neither Wilson nor Love thought that Love was entitled to an interest in the copyright on "California Girls," or the monies that resulted from such copyright ownership.

///

1     7.   <u>The Alleged Promises Were Outside The Scope Of Wilson's</u>

2          <u>Attorneys' Authority, Contravening The Professional</u>

3          <u>Rules Of Conduct for Attorneys</u>

4       Love contends that some of his deposition testimony in the

5  Wilson Litigation regarding Wilson's ownership of the copyright

6  was "colored" by the promises that Love would financially benefit

7  from the successful outcome of the that litigation.  Any such

8  promises of payment made to Love by Wilson's attorneys would have

9  been made in violation of Professional Rules of Conduct

10  promulgated by the State Bar of California.  It would be unjust

11  to hold the client, Wilson, responsible for any of his former

12  attorney's wrongful conduct, which is specifically prohibited by

13  Rules of the State Bar.

14       Rule 5-310 of the Professional Rules of Conduct provides

15  that an "attorney shall not [d]irectly or indirectly pay, offer

16  to pay, or acquiesce in the payment of compensation to a witness

17  contingent upon the content of the witness' testimony or the

18  outcome of the case."  This is exactly what Love contends

19  Wilson's attorneys did, they promised Love compensation for both

20  his testimony, and for not joining in the suit contingent on the

21  outcome of the case.

22       In addition, Love's recent recounts of past events tell a

23  story of attorney fraud.  That Wilson's attorneys were the bad

24  guys and that Wilson was merely their pawn.  If that is true,

25  which Wilson contests, such actions cannot be pinned on Wilson.

26  Wilson a known incompetent cannot be held responsible for his

27  attorney's independent fraud.  Such a result would be grossly

28  unjust.

W81-1.2.DLD.22.TRIALBRI.3

I.   The Eighteenth Claim Must Fail As A Matter of Law

For all and the reasons set forth above, a judgment as a matter of law should be entered in Wilson's favor as to Love's Eighteenth Claim for breach of contract/promissory estoppel.

IV.

THERE IS NOTHING LEFT TO THE NINETEENTH

CLAIM FOR UNJUST ENRICHMENT

The Court's Order holds that Love's Nineteenth Claim is based solely on his Eighteenth Claim.  See p. 21 of the Order. As a result, if Love's Eighteenth Claim against Wilson fails subject to a judgment as a matter of law, or is otherwise lacking merit, the Nineteenth Claim must also fail since it adds nothing of substance to Love's pleading.  See e.g., Jefferson v. J.E. French Co., 54 Cal. App. 2d 717, 719, 7 Cal. Rptr. 899, 355 P.2d 643 (1990) ("(T)he nature of the right sued upon, not the form of the action or the relief demanded, determines the applicability of the statute of limitations"; claim for an "accounting" barred by two-year statute because premised on oral contract); Pena v. Los Angeles, 8 Cal. App. 3d 257, 262, 87 Cal. Rptr. 326 (1970) (Declaratory relief barred where underlying substantive claims barred).

Moreover, Love's recovery of almost two million dollars in this case, combined with the now-uncontestable validity of Love's transfer of his copyright interests, precludes any attempt to prove Wilson was unjustly enriched at Love's expense.

Love has come up with several theories to recover on his Nineteenth Claim for unjust enrichment, however, not one of them ///

W81-1.2.DLD.22.TRIALBRI.3

1  is valid for they all are precluded pursuant to the Court's Order

2  of April 18, 1994.

3      Love claims that Wilson has been unjustly enriched by his

4  receipt of Love's royalties.  However, this Court has ruled that

5  the Nineteenth Claim for unjust enrichment applies only to the

6  Eighteenth Claim.  What Love is asking for has already been ruled

7  on by this Court against him; Love's claims of co-authorship are

8  time-barred.

9      Love also claims that Wilson has been unjustly enriched

10  because he was paid $10 million for partnership assets created by

11  both Wilson and Love.  However, Love has not and cannot establish

12  a partnership, and Love's action for an accounting was ruled on

13  in Wilson's favor.

14      And finally, Love claims that Wilson would be unjustly

15  enriched by his receipt of future royalties for songs allegedly

16  co-authored by Love.  However, Love voluntarily dismissed his

17  claim for declaratory relief and as such this Court is powerless

18  to award Love future royalties.

19                            V.

20                   EVIDENTIARY ISSUES

21  A.   All Testimony And Evidence Relating To Love's Dismissed

22       Claims Should Be Excluded At Trial

23      This Court's Order has eliminated Love's First-Fourth,

24  Seventh-Ninth, Thirteenth-Fourteenth and Sixteenth-Seventeenth

25  Claims from this action.  Love should not be allowed to bring

26  through the back door of his few remaining claims all the events

27  going back over three decades relating to Love's now dismissed

28  claims for songwriting and publishing royalties.  Love himself

W81-1.2.DLD.22.TRIALBRI.3

1    acknowledges that conduct prior to the late 1980's.  See Love's
2    Motion in Limine to Exclude Any Reference to or Evidence of
3    Love's Settlement with Mitchell, Silberberg & Knupp and Irving
4    Music, p. 4 ("Love's claims against Wilson are based on Wilson's
5    conduct in the late *1980's*.")

6        Such testimony and evidence would not only be irrelevant
7    under Fed. Rules of Evidence 401, but also unfairly prejudicial
8    to Wilson and entirely lacking in probative value under Fed.
9    Rules of Evidence 403.

10       Moreover, such evidence and testimony would only serve to
11   hopelessly mislead and confuse the jury at the same time that it
12   would lengthen the trial by a tenfold.

13   B.    Landy's Testimony Must Be Excluded At Trial

14       1.    Wilson's Communications With Landy Are Privileged Under
15             The Psychotherapist-Patient Privilege

16       The nature and scope of privileged communications are
17   governed by state law.  Fed. Rules Evid. 501.  Under California
18   law, communications between a patient and his/her psychotherapist
19   made during the course of the patient-psychotherapist
20   relationship and made in confidence are privileged under
21   California Evidence Code section 1012.  It is the patient's
22   intent which controls; if the patient intends that the
23   communication be confidential, it does not matter whether in fact
24   it is indeed confidential.  Id.  It is the patient who holds the
25   privilege, but the privilege can be claimed by either the
26   patient, a person authorized by the patient, or the person who
27   was the psychotherapist at the time of the communication.  Evid.
28   Code §§1013 and 1014.

1   Landy was Wilson's psychotherapist.  Wilson's relationship
2   with Landy was one for professional purposes and all
3   communications Wilson made to Landy were made "in the course of
4   that relationship and in confidence."  Evid. Code §1012.
5   Accordingly, all of Landy's testimony regarding communications
6   with Wilson must be excluded from trial.
7       2.   Landy Was Not Wilson's Agent
8       Landy's allegedly fraudulent communications to Love must be
9   deemed inadmissible under Federal Rule of Evidence 403.  Rule 403
10  provides for the exclusion of otherwise relevant evidence where
11  the probative value of the evidence "is substantially outweighed
12  by the danger of unfair prejudice, confusion of the issues, or
13  misleading the jury . . . "
14      Landy took advantage of Wilson's susceptible nature and
15  exercised undue influence over Wilson.  Any statements Landy may
16  have made to Love or others, purportedly on Wilson's behalf, were
17  not on Wilson's behalf.  Wilson cannot be held liable for Landy's
18  fraud, if any; Landy was not Wilson's agent nor did Wilson have
19  the capacity to ratify any of Landy's conduct.  Allowing Landy's
20  testimony at trial would provide little probative value as to
21  Wilson's conduct toward Love, while it would create a substantial
22  danger of undue prejudice to Wilson.
23  C.  Love's Testimony Is Admissible
24      Love gave sworn testimony under oath at his depositions
25  during the Wilson Litigation.  These sworn statements are
26  admissible in the present litigation.  First, these statements
27  are declarations of a party opponent and admissible under Federal
28  ///

1   Rule of Evidence 801(d)(2).  These statements may also be used to

2   impeach Love at the present trial.  Fed. Rule Evid. 613.

3       Love has argued that his prior testimony should be excluded

4   under Rule 804(b)(1).  However, Rule 804(b)(1) does not, and

5   cannot, support that proposition.  Rule 804(b)(1) provides for

6   the admission of certain statements which would otherwise be

7   inadmissible hearsay, because the statements possess such

8   qualities that would make them reliable whether the declarant is

9   available or unavailable for cross-examination.  Love appears to

10  argue that his prior testimony does not fall under the category

11  804(b)(4), however, Love the declarant is available as a witness,

12  and moreover, these statements are admissions by a party opponent

13  and admissible under 801(d)(2).

14  D.  <u>Wilson's Settlement Amount From The Prior Wilson Litigation</u>

15      <u>Against Irving Music Must Be Excluded From Trial</u>

16      Federal Rule of Evidence 408 provides that evidence of a

17  settlement "is not admissible to prove liability or invalidity of

18  the claim or <u>its amount</u>." (Emphasis added.)  The dollar amount of

19  Wilson's settlement in the Wilson Litigation cannot be used as

20  evidence of the value of Love's claim against Wilson.  And any

21  plausible reason Love may have for using the settlement amount as

22  evidence would be substantially outweighed by the prejudicial

23  effect it would have on Wilson.  Fed. Rule Evid. 403.

24  E.  <u>Wilson's Pleadings from Prior Litigation Are Not Binding</u>

25      <u>Admissions</u>

26      Love will attempt to admit into evidence Wilson's pleadings

27  and testimony from the prior Wilson Litigation as binding

28  ///

1  evidentiary admissions.  However, there is no merit to Love's
2  position.

3    Binding evidentiary admissions are only those admissions
4  made pursuant to Federal Rules of Civil Procedure Rule 26(b).
5  And such admissions are binding only as to the action for which
6  it was made.  See Fed. R. Civ. Proc. 36(b).

7    Pleadings and testimony from a prior action can be admitted
8  into evidence as a statement by a party opponent under Federal
9  Rule of Evidence 801(d)(2) or for impeachment purposes under Rule
10 613.  However, they are not judicial admissions and thus have no
11 binding effect.  See Derby & Co., Inc. v. Seaview Petroleum Co.,
12 756 F.Supp. 868 (E.D. Pa. 1991); Parrixsh v. Atchison, T. & S. F.
13 R. Co., 152 F.Supp. 158 (D. Cal. 1957).

14 F.   Additional Evidentiary Problems

15    The following additional evidentiary problems are raised for
16 the Court's consideration in Motions In Limine filed by Wilson.
17 These include:

18       1)   Motion to exclude the dollar amount of Wilson's
19            settlement of the Wilson Litigation; and to exclude
20            Wilson's settlement discussions with Love;

21       2)   Motion for admissibility of Love's prior testimony;

22       3)   Motion for admissibility of Love's settlement in this
23            case with A&M and MSK;

24       4)   Motion to exclude evidence of Love's defamation action;
25            and to exclude evidence of Wilson's book "Wouldn't It
26            Be Nice;"

27       5)   Motion to exclude evidence of statements made by
28            Wilson's former attorneys to Love in connection with

1          the Wilson Litigation; and statements Dr. Landy made to

2          Love in connection with that same action;

3    6)   Motion to exclude evidence that Wilson is responsible

4          for the alleged oral contract with Love entered into by

5          Wilson's counsel in the Wilson Litigation; and

6    7)   Motion for prefatory cautionary instruction regarding

7          Wilson's trial testimony;

8    8)   Motion to preclude Love from using leading questions

9          with Wilson; and

10   9)   Motion to preclude Love from calling Peter Anderson as

11         a witness.

12

13  Dated:   May 20, 1994          J. MICHAEL CROWE
                          DOUGLAS L. DAY

14                          CROWE & DAY

15

16

17               By:   _____

18                       Douglas L. Day
                       Attorneys for Defendant

19                       BRIAN WILSON, by and through
                       JEROME S. BILLET, Conservator

20                       of the Person and Estate of
                       Brian Wilson

21

22

23

24

25

26

27

28